[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 36 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 38 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 39 
It is not denied, that, as between principal and surety, when the character in which they are obligated does not appear on the face of the instrument, parol evidence is admissible to show which is principal and which surety. Nor is it denied that one who is about to become a surety upon a note already executed by the principal and other sureties, may regulate the terms of his suretiship to suit himself. He may contract to be co-surety with others who have executed the instrument, or to be, as between him and them, surety alone, not co-surety with them, and thus exempt himself from liability to contribute. (Harris v. Warner, 13Wend. 400.) The defendant assumes that the proof offered by him, and rejected, would establish an agreement between him and one of the principals, *Page 40 
by which he was not to be co-surety with the plaintiffs, but surety for them, and therefore not liable in this action to reimburse to the plaintiffs any portion of the amount paid by them. The note itself affords no evidence of this agreement. The question therefore is, whether it is competent to establish it by parol. The doctrine of contribution was first established and enforced in equity. It rested upon and resulted from the maxim, that "equality is equity." This principle has been so long established that persons becoming bound as sureties for a principal debtor, are regarded as acting under a contract implied from the settled rules which regulate their liability to each other. (Craythorne v. Swinburne, 14 Vesey, 169.) As between the makers of the note and the payee, their rights and liabilities are regulated by the terms of the contract as expressed; as between the sureties the contract is implied from their signatures to the note, so that the whole contract as expressed and implied is, in short, an agreement by the several obligors to pay the note at maturity, and if upon default of its being paid, either of the sureties pay it, the others shall contribute, each his equal proportion of the amount paid, less the share of the one who has paid the whole. In the one case the parties have defined their liabilities in express terms, in the other the law has defined them, and in terms equally express, and thus settled as between the sureties the legal effect of subscribing their names to the note. They are each chargeable with knowledge of the legal liability incurred as between themselves by the execution of the note, and should therefore be regarded as standing in the same relation to each other, and bound by the same rules they would be if the legal effect of their contract had been fully written above their signatures.
We are referred to the case of Craythorne v. Swinburne, (14Vesey, 169,) as authority for receiving parol evidence of the terms upon which the defendant signed the note. That was a case in which the instrument then under consideration very clearly regulated the terms of the suretiship, but parol evidence was offered and received. It was, however, evidence of *Page 41 
extrinsic facts, and was, as remarked by Lord Eldon in that case, in support and not in contradiction of the written instrument. No doubt is entertained that parol evidence of collateral facts is admissible to rebut the presumption arising from the face of the instrument, that all are principals and equally bound to contribute. (Harris v. Brooks, 21 Pick. 195.) The defendant's proposition goes further. After proving for whose benefit the note was made, and who received the funds, and thus establishing the relation of principal and surety, he proposes to show that he was not co-surety, not by extrinsic facts, but by a parol agreement varying the operation of his contract as defined by law and subscribed to by him, and thus, in effect, made his written agreement. Within my means of research, I have not been able to find a case going that length, and I apprehend none exists. The law in this case having defined the rights and obligations of the sureties as between themselves, their signatures establish their assent to it, and the contract is thus made as clear and certain as if the whole had been written. It is the highest and best evidence of their agreement, and the reason of the rule that excludes parol evidence from being received to vary the operation of a contract, wholly written by the parties, applies with all its force to this case.
The mischiefs and frauds to be guarded against in the one case are as great as those in the other. Although the facts in this case are not analogous to those in the case of Thompson v.Ketchum, (8 John. 148,) yet the principle which should govern this is stated there by KENT, Ch. J., as a principle of general application, and that is, where the operation of a contract is clearly settled by a general principle of law, it is to be taken to be the true sense of the contracting parties, and it is against the general rule to vary the operation of a writing by parol. (See Hall v. Newcomb, 7 Hill, 416.)
It will not be denied that the operation of the contract in this case was clearly settled by a principle of law. The defendant by subscribing his assent to it, has so far made it his written contract as to be prohibited from overthrowing it by a *Page 42 
parol agreement made at the same time. The judgment of the supreme court should be affirmed.