WILLIAM ADAMS v. H. C. & N. B. FLANAGAN.

*Promissory Note. Sureties. Parol Evidence. Deposition. Partnership. Principal and Agent.*

The plaintiff signed a note as surety upon the erroneous supposition, springing from the deceit of the principal and in no way imputable to the defendants, that the defendants would sign as co-sureties with him. The defendants in good faith and without any knowledge of what the plaintiff supposed as to their signing, signed the note upon the distinct and express understanding with the principal and with the payee, that they signed as sureties for the plaintiff, and not as co-sureties with him. *Held*, that they did not thereby become joint sureties with the plaintiff and liable to contribution.

Parol evidence is admissable to show that all are not co-sureties upon a note when they so appear.

A deposition will not be excluded because the caption describes the defendants, who have the same surname, by giving the surname but once, prefixed by the initial letters of their christian names;—as H. C. & N. B. Flanagan.

If the authority to sign a twenty days note was not intended to be limited to a twenty days note, and if the difference in time between twenty days and thirty days was immaterial, so that the party giving the authority had not in his mind when he gave it, whether it was to be a twenty or a thirty days note, then the authority to sign will be considered as not restricted to a twenty days note.

ASSUMPSIT upon the common money counts. Plea, the general issue, and trial by jury, April Term, 1862, PIERPOINT, J., presiding.

The plaintiff's claim, was for contribution from the defendants, as co-sureties with him and Ovette Boynton for one Ed. Mills, upon the following promissory note :

HINESBURGH, December 21, 1860.

One month from date we jointly and severally promise to pay the Commercial Bank at their Bank in Burlington, three hundred dollars, value received.

ED. MILLS,

O. BOYNTON,

WILLIAM ADAMS, Surety,

H. C. & N. B. FLANAGAN, Surety.

One-half of which note with certain costs thereon, the plaintiff had paid. The defendants defended on the common ground, that

Adams *v.* Flanagan et al.

they were not co-sureties with the plaintiff upon the note, but, if sureties at all, were sureties for said Boynton and the plaintiff; and Noble B. Flanagan defended upon the further ground, that the note in question was not signed by him, nor by his authority.

It appeared in evidence that in December, 1860, the said bank held a note of $300, then past due, against said Mills, which note was also signed by said Boynton and said Adams as sureties; and that said last mentioned note was surrendered by the bank upon Mills giving the note in question. It also appeared that the parties first arranged to give a twenty days note, and that Noble B. Flanagan directed his partner, Hoel C. Flanagan, to attach their partnership name to the twenty days note, when Mills should return with it signed as agreed upon by himself, Boynton and Adams. But Mills returned with a thirty days note, to which said Hoel C. Flanagan attached the partnership names of H. C. & N. B. Flanagan. Nothing was at any time said in the presence of N. B. Flanagan about his signing any other than the twenty days note, and no other time was mentioned or referred to in his presence, and he had no knowledge that any other than the twenty days note had been taken or signed until after the *one month* note had matured. It did not appear that N. B. Flanagan regarded the difference in time as material, or said anything about limiting the note to twenty days, or not signing for a longer time.

The plaintiff offered to prove by himself as a witness, that on the occasion of his signing the note, Mills told him, in the absence of the defendants, that the defendants had agreed to sign as sureties on the note if he, the plaintiff, would; and that he should not have signed the note unless he had understood that the defendants would also sign it. All this was objected to by the defendants, but the court admittted it, and the plaintiff testified according to the offer.

The plaintiff offered the deposition of Ovette Boynton, which the defendant objected to, for an insufficient description of the parties to the suit in the caption of the deposition. The description objected to was as follows: "in which cause William Adams is plaintiff, and H. C. & N. B. Flanagan are defendants,

&c." This objection was overruled by the court, and the deposition was read to the jury. The other material evidence is stated in the opinion of the court.

The plaintiff seasonably objected to the admission of parol testimony to show the existence of a different relation between the plaintiff and defendants from that which would legally arise from, or be created by, the note itself, as signed by the parties to it; but the evidence was admitted subject to its legal effect.

The court informed the counsel that they should instruct the jury that upon the legal effect of the evidence, if believed, the defendants were co-sureties with the plaintiff upon the note, and liable to him for contribution.

That on the question as to the authority of H. C. Flanagan to sign the partnership name to the note, the defendants were entitled to have the case submitted to the jury. But that the court would instruct the jury that unless they were satisfied from the evidence, circumstantial or otherwise, that N. B. Flanagan regarded the difference in time as material, between twenty days and thirty days, and intended to limit the authority of H. C. Flanagan to sign a note for twenty days only, so that H. C. understood, or had reason to understand, that he was not authorized to sign for a longer period, the signature made by H. C. Flanagan would be binding on the firm.

The defendants declined to go to the jury on this question or as to the credibility of the evidence, and a verdict was taken for the plaintiff.

To the several rulings and decisions of the court, the defendants excepted.

———— ————, for the defendants, cited upon the point that parol evidence is admissible to show for whom the defendants signed as sureties, *Lothrop* v. *Wilson*, 30 Vt. 604; *Keith* v. *Goodwin*, 31 Vt. 268; *Craythorne* v. *Swinburne*, 14 Ves. 160; *Harris* v. *Warner*, 13 Wend. 400; *Crosby* v. *Wyatt*, 23 Maine 156; *Robinson* v. *Lyle*, 10 Barb. 512. The plaintiff's argument is that the defendants were sureties either with the plaintiff or for him; that they could not be sureties for him without his con-

sent; that he did not consent to this, therefore they were his co-sureties for Mills. There are many answers to this argument. It is questionable as a legal proposition, whether one may not become the surety for another without the consent of the latter, and so as to create the obligation of indemnity. See *Keith* v. *Goodwin, supra,* and cases there cited; *Harris* v. *Warner,* 13 Wend. 400. There was evidence notwithstanding the testimony of the plaintiff as a witness, that the plaintiff was willing to have the defendants sign as sureties for him. The argument is *felo de se;* for if the defendants could not become surety for the plaintiff without his consent, how is it that the defendants can be made surety with the plaintiff for Mills against their consent? The caption of the deposition objected to was defective in that it did not name the parties to the suit. *Swift* v. *Dean et al.,* 10 Vt. 282; *Haskins* v. *Smith,* 17 Vt. 263. "An initial letter is not to be regarded as any part of a man's name." REDFIELD, J., in *Walbridge* v. *Kibbee,* 20 Vt. 543; *Isaacs* v. *Wiley et al.,* 12 Vt. 674; *Reynolds* v. *Haskin,* 6 E. C. L. 507; *Parker* v. *Bent,* 16 E. C. L. 75; *Appelmans* v. *Blanche,* 14 M. & Wells. 156.

A special authority must be strictly pursued, or the principal is not bound. *East India Co.* v. *Hensley,* 1 Esp. 111; *Batty* v. *Carswell,* 2 Johns. 48, like this in its facts; *Rossiter* v. *Rossiter,* 8 Wend. 494; *Ward* v. *Bank of Kentucky,* 7 Mon. 93, (5 U. S. Dig. 588, pl. 80 ) See also 2 Am. L. Cas. 287-8; *Walrath* v. *Thompson,* 6 Hill 540; *Birkhead* v. *Brown,* 5 Hill 634; *Dobbin* v. *Bradley,* 17 Wend. 422.

*E. J. Phelps,* for the plaintiff.

On the face of the note, the parties to this action stand as co-sureties with each other. The addition of the word " *surety* " to each of their successive signatures, under that of the principal, evidences that undertaking as between themselves. *Lathrop* v. *Wilson,* 30 Vt. 604; *Warner* v. *Price,* 3 Wend. 397. A mutual contract for contribution is implied. *Longley* v. *Griggs,* 10 Pick. 121; *Bradley* v. *Buwell,* 3 Denio 61; *Davies* v. *Humphrey,* 6 Mee. & Wels. 152, and cases cited in note; 1 Am. L. C. in Eq. 68. The agreement between these parties is therefore in writing, and

Adams *v.* Flanagan et al.

cannot be controlled by parol evidence. It is the same as if the contract which is necessarily implied from the terms of the instrument, was written out in words. The implied contract arising on the face of a writing can no more be varied by parol, than an express contract. *Com. Bank of L. Erie* v. *Norton*, 1 Hill 501. Where the undertaking is expressed, it has been held not open to be varied by parol evidence. *Warner* v. *Price, supra; Seabury* v. *Hungerford*, 2 Hill 84; *Hall* v. *Newcomb*, 3 Hill 233. But if this contract is held to be only *prima facie*, and liable to be varied by proof of an agreement different from that expressed, the concurrence of the plaintiff in such an agreement was requisite, he being the principal party to be affected by it. *Warner* v. *Price, supra; Beaman* v. *Blanchard*, 4 Wend. 432; *Norton* v. *Coons*, 3 Denio 130; *Lapham* v. *Barnes*, 2 Vt. 213. And what passed without his knowledge between the defendants and the bank, is entirely immaterial. *Norton* v. *Coons, supra; Flint* v. *Day*, 9 Vt. 345. The ruling of the court as to the authority of H. C. Flanagan to sign the partnership name was correct. A partner's authority for such a purpose need not be express, but may be implied from previous similar authority, from course of dealing and the like. Collyer on Part., sec. 421 and notes; *Com. Bank of L. Erie* v. *Norton*, 1 Hill 501; *Early* v. *Reeds*, 6 Hill 12; *Levy* v. *Pyne*, 41 Eng. Com. Law 250. And when one partner authorizes another to sign a bank note as surety in the name of the firm, in the absence of special restriction, he intrusts him with a reasonable discretion within the ordinary usage and course of business.

ALDIS, J. The court instructed the jury that upon the legal effect of the evidence the defendants were co-sureties with the plaintiff upon the note. We must assume therefore that whatever the defendants' evidence tended to prove *was* proved. The defendants' evidence tended to show, that the defendants refused to sign the note as co-sureties with the plaintiff and Boynton; but at the request of Mills, the principal and the maker of the note, consented to sign it as sureties for Adams and Boynton after he and they had signed it; that upon this understanding

Mills signed it and went to Adams and Boynton and procured their signatures—that they entrusted the 'note thus signed to Mills—that he presented it to the Flanagans, and that they then signed it in the presence of Mills the maker and of Chittenden the attorney of the payees, with the distinct and express agree-ment previously stated and then repeated, that they signed as sureties for Adams and Boynton and not as co-sureties with them; that they affixed only the word " surety" to their names, and not the words " surety for Boynton and Adams," because Chittenden told them that the legal effect of signing after the others and adding the word " surety" only, would be to make them sureties for and not with them.

It must therefore be regarded as a fact, that there was no con-current or mutual understanding between the sureties that they were all to be co-sureties jointly for Mills; but on the contrary that the Flanagans refused throughout the whole transaction to become co-sureties with Adams and Boynton, and insisted in good faith that they would not sign till after Boynton and Adams had signed, and then only as sureties for them and not with them. This fact excludes all those cases as precedents where a mutual understanding existed between the sureties that they should be co-sureties with each other.

It must further be considered as proved, that the defendants derived no benefit or advantage from Adams and Boynton sign-ing as sureties. Adams and Boynton were already liable as sureties—the defendants were not. Mills wanted a renewal of the note. It was not for the benefit of the defendants that the 'note was to be renewed.

Neither did the defendants request Adams and Boynton to sign the new note. Nothing passed between the defendants and them on the subject,—nor did the defendants authorize Mills to carry any word, request or communication from them to Adams and Boynton. Whatever Mills said to them he said without the knowledge or privity of the defendants; not as from them or for them, but merely from himself, as a volunteer, upon his own credit and from his own notion. Hence there is nothing in this case to indicate that the defendants said or did anything to lead

the plaintiff to suppose that they would sign the note as co-sureties with him; nor that they said or did anything to enable Mills to mislead the plaintiff, and to induce him to suppose that they would sign with him as a co-surety.

Nor is there any thing to show that the defendants knew or had any suspicion, that Adams signed the note on the expectation that they would sign as co-sureties with him.

The case is bare of all imputation on the defendants of fraud, unfairness, negligence, or acts tending to mislead the plaintiff and to induce him to sign under any misapprehension of the liability which they were to assume.

It does however appear in the case that Mills, when he went to get the plaintiff to sign, falsely stated to him that the defendants would sign as co-sureties with him; and thereby the plaintiff was in fact induced to sign the renewal note which otherwise he would not have signed. But as we have already said—this must be regarded as a volunteer falsehood of Mills, to which the defendants were not privy, have not contributed or given credit, and for which they are not in any way responsible.

The defendants acted in good faith, and must have supposed that Mills would either say nothing to Adams, or else would tell the truth. They could not have anticipated or prevented the falsehood. They knew nothing of this falsehood when they signed. It must also be understood that the defendants knew that Adams and Boynton were merely sureties for Mills.

The case then is this. Adams and Boynton sign as sureties upon the erroneous supposition (springing from the deceit of Mills and in no way imputable to the defendants) that the defendants would sign as co-sureties with them. The defendants in good faith, and without any knowledge of what the plaintiff supposed as to their signing, signed the note, when presented to them by Mills with the signatures of himself, Boynton and Adams attached to it, upon the distinct and express understanding with the principal, and with the payee, that they signed as sureties for Adams and Boynton and not as co-sureties with them. Do they thereby, by operation of law, become joint sureties with Adams and Boynton and liable to contribution?

If they are so liable it is not upon the ground of fraud, negligence, or the misleading of the other sureties. All that the other sureties can claim on the ground of good faith and fairness, they can claim also. They have no more deceived the other sureties, than the other sureties have them. Indeed if there is a balance of negligence imputable to any, it is to Adams and Boynton, who entrusted the principal with the note after they had signed it and thus gave him the appearance of an authority to use the note with their names attached, as he might see fit. The defendants might well assume that the names attached were there pursuant to the condition they had imposed as precedent to their signing of the note.

If they are liable it is not by virtue of an agreement to become so, or through silence in the execution of the note from which such an agreement could be implied; but in spite of their express refusal to assume such liability,—such refusal known to the principal before he got the other sureties to sign, and accompanied with the express condition that the other sureties, who were then liable for debt, should sign first, and that the defendants would sign only as sureties for and not with them.

They were under no obligation to the principal or· sureties *to sign the note.* They might have changed the form in which they assumed their liability, so as to preclude all pretence of their being co-sureties with the plaintiff. They might have executed a separate instrument and thus have evidenced conclusively their intent, by a separate bond, or guaranty. *Craythorne* v. *Swinbourne,* 14 Ves. 160; *Keith* v. *Goodwin,* 31 Vt. 268.

The case last cited was of a guaranty on the back of the note.

So if they had appended to their names as signed to the note these words—" sureties for the above signers"—this would have been sufficient evidence of their intention apparent upon the instrument. Such was the case of *Harris* v. *Warner,* 13 Wend. 400, and that decision is approved in *Norton* v. *Coons,* 3 Denio, 130, and same case in 6 N. Y. 33. But it is said by CH. J. Bronson that " if the last surety thus refuses to take the burden of a co-surety he renounces the benefit of that relation. If he will not contribute when the other surety pays the debt, he shall

not have contribution when he pays it himself.   3 Den. 132.
This supposes of course that the last surety thus signing as
" surety for the above" does so without the consent or knowledge
of the former surety ; and that he can not claim the benefit of
the maxim that " equality is equity" so long as he refuses to
bear the burden it imposes.

It is urged by the plaintiff that as the defendants signed the
note without annexing any such restriction to their liability,—as
they thus appear on the face of the note as co-sureties with the
plaintiff, they are bound by the form of the instrument, and can-
not be permitted to show any different understanding or relation
by parol.    Is parol evidence admissible to show that the defend-
ants signed not as co-sureties with the plaintiff, but with the
intent to be sureties for him?

As between the makers and the payee the note excludes all
parol evidence.    It was made for the very purpose of being the
proof, the sole and exclusive proof of the contract.

But as between the signers to it, it was not made or intended to
be the exclusive proof of their agreement and relations. · It is
well settled that it is open to parol evidence to show the true
relations of the signers and the real nature of the contract
between them.

The makers, though all appearing to be joint principals, may
be shown to be—some principals and some sureties.    An apparent
principal may be shown to be a surety—an apparent surety a
principal.    *Harris* v. *Brooks*, 21 Pick. 195 ; 23 Maine 156 ;
*Lapham* v. *Barnes* 2 Vt. 220 ; *Flint* v. *Day*, 9 Vt. 345 ; *Keith*
v. *Goodwin*, 31 Vt. 268 ; *Robinson* v. *Lyle*, 10 Barb. 512.

This rule as settled in this state is clearly and fully stated by
the present Chief Justice in *Lathrop* v. *Wilson*, 30 Vt. 604 :
" The word *surety* being added after the plaintiff's name, and
defendant's name being first on the paper with no such addition,
we think the legal presumption from the paper alone is that the
plaintiff was principal and the defendant surety.    But this was
not by any means conclusive, and the real purpose and object of·
the paper and the real relation of the parties might be shown,
notwithstanding the addition of ' surety' to the plaintiff's name."

Without going into any minute examination of the case, *Norton* v. *Coons,* 6 N. Y. 33, cited by the plaintiff, we deem it sufficient to say that the reasons for that decision as stated in the opinion of Judge GRAY, are not satisfactory to us. He admits that parol evidence is admissible to rebut the presumption arising from the face of the note that all are principals;—he seems to consider that proof by " extrinsic facts " that the signers were not co-sureties is admissible; but proof of an express declaration or agreement by the signers at the time the note was signed that they were not co-sureties he considers inadmissible.

What is such proof but the proof of an " extrinsic fact?" If parol evidence is admissible to show that all are not joint principals when they appear to be, we think it equally admissible to show that all are not co-sureties when they so appear. The note is not made to show the contract and relations of its makers as between themselves; hence as to them and their relations growing out of it parol proof is admissible.

In *Norton* v. *Coons,* Judge GARDINER seems to rest his opinion upon the ground that the evidence offered did not tend to prove the agreement claimed by defendant. Judge FOOT dissented. In the opinion of the supreme court in the same case, 3 Den. 130, we think the language of CH. J. BRONSON may be fairly interpreted as resting the case on the same ground as Judge GARDINER.

*Flint* v. *Day,* 9 Vt. 345, is clearly an authority for the plaintiff. Upon the point applicable to this case we cannot but doubt whether it was well considered. It has been questioned since by some of the judges who participated in the decision—23 Vt. 164, 31 Vt. 276. WILLIAMS, CH. J., in the decision, regards that case as coming within the principle of *Lapham* v. *Barnes,* in the 2d Vt.; but in that case there was no evidence to show that Hitt & Lapham were not co-sureties. He says the declaration made by Day, the co-surety, when he endorsed the note, was not made either to the principal or surety, and therefore could have no effect. This certainly recognizes the principle for for which the plaintiff here contends; and if the suit had been

27

by Day to recover of Flint upon the ground that he was surety for him and not with him, there would have been great force in the objection. But there, as here, the suit was by a surety against a subsequent signer for contribution, when the subsequent signer at the time of signing stipulated he would not be co-surety. It may well be said that, by renouncing *the liability* to contribution as a co-surety, he must be held to renounce *the right* to it; but to go further and hold that he, who refused the liability of a co-surety when he signed, by making claim to the rights of one afterwards, shall not only lose the right he claims, but shall also be bound by the obligation he refused to enter into—this seems to us to be unjust, so long as the claim has in no way influenced another's action or affected his rights. The more reasonable rule is that the surety, at the time he enters into the obligation of suretyship, may make such stipulations as he sees fit in regard to his liability—may extend or restrict it, as he pleases. He must of course do this in good faith. He must not allow his signature to appear to be what it is not, and thus appearing, entrust it to the principal, and so enable him to mislead others and induce them to sign upon the belief that he is a co-surety for the principal without restriction, when in fact his liability is restricted. But, as we have before said, nothing of that kind appears in this case. Subject to such obligations, the right of the surety to stipulate so as not to be liable to contribution with those who have signed before him seems unquestionable. In the recent case of *Keith* v. *Goodwin*, 31 Vt. 268–275, this subject has been very fully considered. CH. J. REDFIELD says, it is universally admitted that " a surety may so stipulate at the time of entering into the obligation as not to be liable to contribution with the other sureties who have signed before him." He says : " The form of doing this is not important. Nor is it important that it should appear on the contract, nor that former sureties should be made aware of the terms upon which subsequent sureties become holden." It is unquestionably true, that much that is there said by the learned Judge was not necessary for the decision of that case ; and that his remarks, so far as applicable to this case, are not to be regarded as entitled

Adams *v.* Flanagan et al.

to the same weight as a decision. But, we think, they are founded in equity and good sense, and, as applicable to this case, are sustained by authority. Even the cases cited by the plaintiff from the N. Y. courts recognise the right of the surety to so stipulate, but hold that the stipulation should appear on the face of the instrument.

. In the 1 L. Cas. in Eq. 68–72, many of the cases are collected, and are shown to recognise the principle which the defendants contend for. It is consistent with the natural right which every man has to make his own agreements. Its proper exercise injures no one's rights. It harmonizes with established principles of law. In this respect, therefore, we seem the charge erroneous.

2. It is claimed that the depositions should have been excluded because the caption describes the defendants as " H. C. and N. B. Flanagan." This is not like the cases in 10 Vt. 282, and 17 Vt. 263, where the names of some of the defendants were wholly omitted, " John Dean and others," " Seneca Smith and others." Here the names appear and the only alleged error is that the christian name is not set out in full, the initials only being pre-fixed to the surname. We are not disposed in mere matters of form to overlook errors that tend to uncertainty and confusion ; but we think it would be over-nice to exclude a deposition on this ground. It is hardly conceivable that the use of initial letters for christian names in this respect, can bring any practical mischiefs in its train. The decisions that the omission of an initial letter of a middle name is no defect, being an actual error in the description of the name, would seem to stand on more questionable ground. Yet it has long been so held in this state, and we know of no evil attendant upon the practice.

3. As the defendants declined to go to the jury on the question of the authority of H. C. Flanagan to sign the partnership name to the note, we must assume that all the facts referred to in the instructions of the court on this point are true. If the authority to sign the note was not intended to be limited to a twenty days note, if the difference in time was immeterial, so that when Noble C. Flanagan authorized H, C, to sign the note it was not

in his mind whether it was to be a twenty or a thirty days note, then the authority to sign might reasonably be considered as not restricted to a twenty days note.   In construing an authority of this kind, where it is given verbally, is silent upon the controverted point, and is attended by conversation and circumstances which must necessarily be regarded in order to determine the meaning of the language used, and the extent of the authority conferred, there the judge may well direct the jury to consider all the surrounding circumstances in order to ascertain the real intention of the parties.   This was in substance the charge of the court in this case.

Judgment reversed.