## J. E. ROBERTSON

*v.*

## ROBERT DEATHERAGE.

1. CONTRIBUTION—*as between co-sureties.* Although a surety may compel contribution from his co-sureties when he has paid a debt for which they are jointly liable, yet such sureties may, by agreement among themselves, so far sever their unity of interest and obligation as to terminate the right of contribution.

2. SAME—*relations of makers of note to each other may be shown by parol evidence.* It is competent for a maker of a note, in a suit against another maker for contribution, to prove by parol evidence the relations the parties to the note sustained to each other—whether principal and surety or co-sureties.

3. SAME—*surety not liable to his principal for contribution.* Where a party signs a note as security for one who is himself only a surety for the principal maker, he is not liable in a suit for contribution by the one for whom he signed as security.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. P. H. SANFORD, for the appellant.

Messrs. WILLIAMS, McKENZIE & CALKINS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Some time in June, 1871, The First National Bank of Knoxville was the holder of a note for $1000, against L. P. Robinson and Daniel Robertson, which was past due. The makers desired an extension of time for payment, to which the bank assented, provided further and satisfactory security should be given. L. P. Robinson was, as a matter of fact, the principal, and Daniel surety. A new note was made out and handed to the latter, who, about the 30th of July, returned it to the bank, signed by himself and L. P. Robinson and Elsia Robertson, when the president of the bank declined receiving it unless some responsible man would say that Elsia was good as surety for the amount. Thereupon, Daniel informed appellee what

the president of the bank desired, and he, thereupon, went with Daniel to the bank, when he said to the president: "Mr. Runkle, I understand what you want to know of me is, whether Elsia Robertson is good for $1000," to which Runkle replied, "Yes, that is what I want to know." Deatherage then said: "Elsia Robertson is as good for that amount as any man in the county." Thereupon Runkle pushed the note to him, and handed him a pen, and, as appellee says, Runkle said to him: "Then you would not be afraid to go his security for $1000?" Appellee replied, "No," and signed the note. Runkle seems not to distinctly remember what he said, but Daniel Robertson testifies that Runkle said: "Then you would not be afraid to sign a note with him or for him?"

Appellee swears he was not informed that L. P. Robinson was the principal, and he signed the note as surety for Elsia Robertson, but admits there was no express agreement to that effect, but says such was his understanding.

The note was not paid at maturity, and suit was brought on it, and judgment was recovered against all but appellee. Daniel and Elsia Robertson paid it, in about equal portions, and Elsia brought suit against appellee for contribution. A trial was had before the court and a jury, resulting in a verdict in favor of defendant, upon which, after overruling a motion for a new trial, the court rendered judgment, and plaintiff appeals to this court.

Appellee claims that he only became security for Elsia Robertson, and the jury have so found. On the other hand it is claimed, that, as L. P. Robinson was principal, appellee could not become a surety of one of the sureties, without an understanding with all parties to the note to that effect, and that verbal testimony can not be heard to show that such was the arrangement, or if it could, the evidence in this case is not sufficient to show that relation.

In the case of *Paul* v. *Berry*, 78 Ill. 158, it was held, that, "as between the makers, there arises no presumption, simply from the note or the judgment, that the first signer, or any other number less than the whole, is or are to be treated as

principal or principals, and the others are co-sureties; but it rests in evidence, to be introduced *aliunde* the note and judgment, to determine what relation they sustain towards each other—that the burthen is upon the plaintiff to prove he is surety, not only as between himself and another whom he claims to be principal, but also as between himself and another he claims to be a co-surety. Notwithstanding where it is established that two or more persons are co-sureties, and one of them pays the debt for which they are liable, he may have contribution from the others to the extent they are thereby relieved, it is well settled that co-sureties may, by agreement among themselves, so far sever their unity of interest and obligation as to terminate the right of contribution."

This we regard as conclusive on the question that parol evidence may be heard to determine the relations of the parties with each other, whether as principals or sureties. In that case we referred to *Norton* v. *Coons*, 6 N. Y. 33, and refused to follow the rule it announced; hence it can have no bearing on this case. Appellee, then, had the right to show that he only signed as the surety of Elsia Robertson, and if such was the fact, the latter has no legal right to recover, as there was no implied agreement on the part of appellee to make contribution to him.

Has appellee proved that he was but surety of appellant? Has he shown facts from which a jury might reasonably infer that such was his relation to the note? We think he has. All agree that nothing was said to him at the time as to L. P. Robinson being principal. All of the conversation was in reference to the solvency of appellant, and the note on which his name was signed. We are at a loss to see how any person could, from what was said and done, have drawn any other inference than appellant was the principal maker. The other parties, had they so intended, could not have adopted a more successful mode of producing that belief, unless they had so stated in terms. There can hardly be a reasonable doubt that he signed the note under the full belief that he was becoming a surety of appellant, nor did Daniel Robertson or Runkle do

33—82D ILL.

or say anything to undeceive him. The evidence not only authorized but it required the jury to find as they did.

Nor is appellee estopped from insisting on the defense. He did not, directly or indirectly, agree with the others that he would become a co-surety, nor did he do anything from which it could be reasonably inferred by any one that he so intended. Appellant, on the contrary, did not know, for about two months afterwards, that appellee had signed the note. Appellant signed it with the expectation that no other person would sign it, and intending to incur the liability of co-surety with Daniel Robertson alone. Appellee's name was last on the note, and signed after appellant's, and he can have no claim that he was misled by supposing appellee was a co-surety with him. We are unable to see in what manner appellee can be held liable. Daniel Robertson, who had charge of the note and to whom it was intrusted by appellant, must have known that appellee had executed it supposing he was only desired to become surety for appellant. Had appellee, without the knowledge of appellant, stated on the note that he was only surety for the latter, could there be a doubt that appellee was only so liable? Then, in principle, what is the difference between the supposed case and the one at bar? We are unable to perceive any that should produce different results. We are, therefore, of the opinion that the facts proved establish a defense.

The instructions given are in harmony with the views here expressed, and those refused are the reverse of those given, and were, therefore, properly refused.

Failing to find any error in this record, the judgment of the court below must be affirmed.

*Judgment affirmed.*