## Bobbitt v. Shryer et al.

|   |   |
|---|---|
| 70 | 513 |
| 157 | 589 |

**Suretyship.**—*Contribution.*—*Evidence.*—*Estoppel.*—A., B. and C. executed their joint note, without any thing upon its face to indicate that any of them were sureties. A. was principal, and B. signed the note as surety, with the understanding that A. would obtain C. or some one else to sign as a co-surety. The note, with the names of A. and B. signed to it, was presented to C. by A., who stated to C. that he and B. wanted to renew a note, and asked C. to execute the note with them, which he did, believing A. and B. both to be principals. Judgment was taken by the payee, against all the makers. Nothing being settled as to the suretyship, between the parties, and A. being insolvent, B. paid the judgment, claiming to have been a co-surety with C., and assigned his claim for contribution to the plaintiffs. Suit by them against C., for contribution as a co-surety.

*Held*, that C. is not liable to B. for contribution, and that, as between them, the latter must be regarded as a principal and the former as a surety.

*Held*, also, that such statement of A. to C, at the time C. signed the note, was competent evidence, as part of the *res gestœ*.

*Held*, also, that the simple presentation of the note to C., for his signature, by A., without any representation, would have been equivalent to a representation that A. and B. were principals.

*Held*, also, that B was estopped, as between him and C., to claim that he was a surety only, and entitled to contribution from C.

From the Greene Circuit Court.

*W. J. Baker* and *L. Shaw*, for appellant.

WORDEN, J.—Samuel A. Records, James M. Records and Elijah Bobbitt executed their promissory note bearing date January 15th, 1872, and payable one day after date, to John Dishman, for the sum of five hundred and twenty-five dollars. The note was joint, and there was nothing on the face of it to indicate that any of the makers were sureties.

The note not being paid, judgment was obtained upon it by the payee, Dishman, in the Greene Circuit Court, against all the makers ; and, Samuel A. Records being wholly insolvent, James M. Records paid the judgment. In the judgment nothing was settled as to any question of suretyship.

James M. Records, claiming to have been a co-surety with Bobbitt upon the note, for Samuel A. Records, assigned his claim for contribution to the plaintiffs, Shryer and Dugger, who brought this action against Bobbitt for contribution. The cause was tried by the court, resulting in a finding and judgment for the plaintiffs.

The evidence is in the record, and the facts upon which the case must turn may be stated in the language of the witnesses.

The plaintiffs, having given in evidence the record in the action upon the note, introduced James M. Records as a witness, who testified as follows :

" Samuel A. Records was the principal in the note on which the judgment of Dishman was taken, and the defendant, Elijah Bobbitt, and myself were sureties. I paid

the judgment and costs in full, on March 20th, 1875. The amount I paid was $734.14. I signed the note at the meeting-house near Owensburgh. No one else had signed it at that time except Samuel A. Records, and I signed it as his surety, at his request, and it was understood that he would get Mr. Bobbitt· or some one else to sign it too. After I signed it, I gave it to Sam. Bobbitt was not present when this took place. Samuel· A. Records is living now in Illinois, and is insolvent. I transferred my claim for contribution to the plaintiffs, before this suit was begun."

The defendant, Bobbitt, testified as follows:

" Samuel A. Records came to me with the note mentioned, and told me that he and James M. Records wanted to renew a note to John Dishman, and asked me to go on the note with them. The names of Samuel A. Records and James M. Records were then on the note, and I signed the note, believing that both of them were principals. This was at Owensburgh, and James M. Records was not present. I knew nothing about the note except what Sam. told me. After James M. Records paid the judgment, he never said any thing to me about it, nor demanded any contribution. The first I knew of his claiming any thing was when this suit was brought."

We have no brief for the appellees, and are therefore not advised upon what ground it was claimed or held below, that the defendant, Bobbitt, was liable to contribution. We have, however, a very well prepared brief for the appellant, in which it is insisted that he is not thus liable.

Upon an examination of the question, we have concluded, that, on the facts shown, Bobbitt is not liable to James M. Records for contribution; in other words, that, as between James M. Records and Bobbitt, the former must be regarded as a principal in the note, and the latter

as a surety for the two Records. Of course, so far as Samuel A. Records is concerned, he must be recognized as the principal in the note, and the other two makers as his sureties; but it does not therefore follow, that, as between James M. Records and Bobbitt, they must be held as co-sureties of Samuel A. The note, as has been said, was joint, with nothing upon its face to indicate that the makers were not all principals. When signed by James M., it having been already signed by Samuel A., it was left in the hands of the latter to procure the signature of Bobbitt or some one else. In this condition, the note was presented by Samuel A. to Bobbitt for his signature. Samuel A. said to Bobbitt, that he and James M. wanted to renew a note to John Dishman, and asked him to go on the note with them, which he did, supposing them to be both principals. The statement made by Samuel A. to Bobbitt implied clearly that he and James M. were principals in the note; and we see no good reason why the statement was not competent evidence, as part of the res gestæ, tending to show the character of the transaction. Similar evidence was held to be competent in the case of Bowser v. Rendell, 31 Ind. 128. See, also, the cases of Oldham v. Broom, 28 Ohio State, 41; Adams v. Flanagan, 36 Vt. 400.

But, if the evidence in regard to the statement were to be regarded as struck out, the case would not be materially changed. The note on its face, as presented to Bobbitt for his signature, imported that the two Records were principals therein. Sexton v. Sexton, 35 Ind. 88. And the presentation of it to him for his signature, without explanation, was equivalent to a representation that those who had signed it were principals.

In Deardorff v. Foresman, 24 Ind. 481, an elaborately considered case, it was held, that if a surety sign a note and leave it with the principal to procure the signature of other sureties, and the principal, in disregard of his

promise, delivers the note to the payee without procuring the additional sureties, the surety thus signing is bound; and this on the ground that the surety thus signing, by leaving the note with the principal, made the latter his agent for its delivery to the payee.

There is some analogy-between that case and the present.

Here, James M. Records left the note in the hands of Samuel A., to procure the signature of Bobbitt thereto. He thus wilfully put it into the power of Samuel A. to procure Bobbitt's signature on the supposition that both the previous signers were principals, for such was the unexplained legal effect of the note as presented to Bobbitt. Bobbitt was thus misled, and signed the note in the belief that both the previous signers were principals. Under these circumstances, we think it clear that James M. is estopped, as between himself and Bobbitt, to claim that he was a surety only on the note, and entitled to contribution from Bobbitt. The law, as enunciated in the case of *Pickard* v. *Sears*, 6 A. & E. 469, 474, followed in hundreds of instances perhaps, is entirely applicable to the case, viz. : that " where one by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time."

The case is not without authority which seems to be directly in point. In *Keith* v. *Goodwin*, 31 Vt. 268, Goodwin, among others, had signed a note, apparently as a principal; and, after it had been thus signed, Keith signed a guaranty upon it, supposing that those who had signed it were principals, as between themselves. Keith paid the note, took an assignment thereof, and sued Goodwin upon it. Goodwin claimed to have been a surety only upon the

note. REDFIELD, C. J., in delivering the opinion of the court, said, among other things: "The note in question was executed by the members of a partnership or joint stock company, and by this defendant as surety for them, by their procurement. One of the principals then procured the plaintiff and others to guaranty the payment of the note. The fact that the defendant was surety did not appear upon the face of the note, nor was it known to the plaintiff at the time he made the guaranty. * * * *

"But it seems to a majority of the court that the plaintiff is equitably entitled to treat the defendant as he held himself out upon the contract, *i. e.* as principal. There was nothing to intimate that the signers were anything but joint principals. And the defendant having so signed the note and entrusted it to the others, with authority to obtain additional signers, or guarantors, it was giving them authority to represent the defendant as a co-principal ; and by presenting the note merely, and asking a guaranty of the plaintiff, a virtual representation was made that the defendant stood as joint principal." See also, as bearing upon this view, the cases of *Oldham* v. *Broom,* and *Adams* v. *Flanagan, supra.*

The case of *Melms* v. *Werdehoff,* 14 Wis. 18, is also in point in principle. There, Melms & Co. had executed a note to one Busack, for his accommodation. Busack, in order to enable himself to negotiate the note and raise money upon it, applied to the defendant to sign it, which he did, placing his name under that of Melms & Co., and Busack negotiated it. Melms & Co., having paid the note after it became due, sued the defendant for contribution, claiming that the note was made by them and the defendant, for the accommodation of Busack, and that the defendant was liable as a co-surety, to contribution. But it was held that the plaintffs were not entitled to recover. The court said :

" Busack asked the respondent to sign the note, so as to enable him to negotiate it with Pritzkow, and seeing that the note was given by the firm of Melms & Co., and knowing that they were responsible, he signed it for the purpose indicated. He did not suppose that he was signing a note as a security with them. There is nothing in the case that shows he did know the note was not given by the ostensible makers in the usual course of business. He had a right to assume that it was, and to act upon that presumption. They now allege that it was an accommodation note, and that the payee agreed to procure the name of the respondent or Spoerl as a co-surety. If so, they must look to the payee for redress, and not to the respondent. He knew nothing about their understanding with the payee, if indeed they had such an one as they now insist existed. They had invested the payee with the character of a creditor, and enabled him to deal with the world in that relation as respected this note. And now if they or the respondent must suffer damage, the loss should rather fall upon them, who have been the least vigilant, than upon him who signed the note, under the circumstances, as surety for them, supposing they were primarily liable for its payment."

The judgment below is reversed, with costs, and the cause remanded for a new trial.