# 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

BOULWARE, RECEIVER, v. HARTSOOK'S ADM'R AND ALS.

SEPTEMBER 15th, 1887.

1. PRINCIPAL AND SURETY.—*Parol evidence.*—The addition of "security" or "surety" to the name of a signer of a bond is *prima facie* evidence of his suretyship; but it may be rebutted by parol evidence to the contrary.

2. IDEM—*Contribution—Case at bar.*—H. borrowed, without security, money from P., who afterwards asked for security. H. said he would pay P. So H.'s partner, E., arranged to borrow the money of P., and gave his bond, with H. and L. as "sureties." H. paid P. his money. P. loaned it to E., who handed it over to H., who used it for the firm. P.'s administrator got judgment on the bond. H. paid the judgment. HELD:

> H. was principal debtor, and can have no contribution from L. as surety.

3. BANKRUPTCY—*Assignee—Sale free of liens.*—Without order of court to that effect, assignee cannot sell bankrupt's lands free of liens. *Ray* v. *Norseworthy*, 23 Wall. 128.

4. IDEM—*Principal—Sureties—Contribution—Case at bar.*—E., the obligor on said bond, whereon judgment was had, became a bankrupt. Assignee sold his lands. H., one of the "sureties," bought it. Its value exceeded the judgment. No proceedings were had in bankrupt court for their sale free of liens. HELD:

> H. was not entitled to contribution from his "co-surety."

Appeal from three decrees of circuit court of Nelson county, rendered in the chancery cause of Jeffersons against Lewis and others—the first entered in vacation, February 26th, 1885; the second entered April 18th, 1885, amending

the first, and the third entered June 16th, 1886. The other claims being compromised, the controversy here is only between Z. R. Lewis and Camm Patteson, trustee, with Hartsook's administrator and A. L. Boulware, receiver. Opinion states the case.

*J. D. Horsley, A. L. Boulware* and *Ro. Whitehead,* for the appellants.

*Thomas S. Martin, J. T. Brown* and *Camm Patteson,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The original bill in this cause was filed January —, 1878, by L. B. Jefferson and E. G. Jefferson against Z. R. Lewis, D. J. Hartsook and others, claiming that certain deed of trust debts held by said Hartsook against said Lewis had been discharged; attacking the transactions between said Hartsook and Lewis in reference to personal property on the Rockfish estate of Lewis, which was sold under execution and purchased by said Hartsook, and loaned by him to said Lewis, as evidenced by a deed of loan; and also attacking a deed of settlement made by said Lewis to Camm Patteson, trustee, for the benefit of said Lewis' wife and children,—which said real and personal estate the said Jeffersons sought to subject to the payment of a judgment which they held against said Lewis. On the thirteenth of July, 1878, the Jeffersons, the plaintiffs, compromised their claims with the Lewises and Camm Patteson, trustee, and assigned their claim to the said trustee. They are no longer interested and are unconcerned in the cause, the controversies being now between Z. R. Lewis and Camm Patteson, trustee for Mrs. Lewis and her children, on the one side, and Hartsook's administrator and A. L. Boulware, receiver of the Piedmont and Arlington Life Insurance

Company, which was the assignee of certain deed of trust secured debts held by Hartsook against Z. R. Lewis   When this case was called for a hearing in this court the following paper was handed to the court by the counsel at the bar:

"MEMORANDUM—*Boulware, Receiver, etc.,* v. *Z. R. Lewis, etc.*

"Counsel for Boulware, receiver, this ninth day of December, 1886, offer to settle the above case on the following basis, viz: The decree of the court below to be reversed so far as it fixes the balance due on the debts claimed by Boulware, receiver, etc.; and the amount due by Z. R. Lewis on the debts secured in the trust deed referred to in the record to be fixed at $6,500, as of this date, and the costs in the court of appeals to be equally divided between Lewis and Boulware, receiver, etc.   The Powell judgment claimed by D. J. Hartsook's administrator not embraced in this, Mr. Robert Whitehead being counsel for B. C. Hartsook, administrator, and he not being a party to the proposed settlement.   As counsel for Z. R. Lewis and Camm Patteson, trustee, we are of opinion that said offer of compromise should be accepted, and we submit it to Camm Patteson, trustee, with our approval and distinct recommendation that it be accepted.

"December 9, 1886.        J. THOMPSON BROWN,
                "THOMAS S. MARTIN.

"The above is accepted by me, and counsel are directed to carry it out.

                "CAMM PATTESON,
"Trustee for Z. R. Lewis and Mary E. Lewis and her children.
"The within is the compromise.

                "BOULWARE, receiver,
            "by J. D. HORSLEY, his attorney."

The effect of the filing of the foregoing paper is to settle

every question and controversy in the cause except as to
the rights and liabilities of the parties in reference to the
judgment of John E. Powell, executor of Leonard Powell,
deceased, against R. W. Elsom, D. J. Hartsook and Z. R.
Lewis, on which D. J. Hartsook's administrator claims a
contribution. The said judgment of Powell's executor
against R. W. Elsom, D. J. Hartsook and Z. R. Lewis for
$2,440.68, with interest thereon at the rate of 6 per centum
per annum from nineteenth day of April, 1856, and $7.98
costs, was obtained at the July term, 1867, of the county
court of Nelson county and was docketed on August 3, 1867,
in Nelson county, and in Albemarle county on the twelfth
day of March, 1871.

D. J. Hartsook paid off the said judgment and took an
assignment from Powell's executor January 1, 1872, and in
his answer filed on the twenty-seventh March, 1878, to the
original bill, he claims that in this judgment R. W. Elsom
was principal debtor, and he and Z. R. Lewis were co-sure-
ties for Elsom; and that having paid the whole of the
debt, by the rule of subrogation and by virtue of the as-
signment from Powell's executor, the said Z. R. Lewis is
indebted to him in the sum of $896.02, with interest from
June 6, 1871, being his contributive share (after adjusting
some credits) of the money paid by said Hartsook upon
the said Powell judgment. Z. R. Lewis and Camm Patte-
son, trustee, in their exceptions to the report of the master
commissioner, deny the validity of this claim to contribu-
tion, and assert that D. J. Hartsook was a principal debtor
and not a co-surety with Z. R. Lewis; that, as a member
of the partnership of Elsom & Co., he got the use and
benefit of the money borrowed by Elsom from Powell, and
Z. R. Lewis was a surety for R. W. Elsom and D. J. Hart-
sook in the bond to Powell, which was the basis of the
judgment obtained by Powell's executor; and they deny
that the said Z. R. Lewis or the lands in the proceedings

mentioned are in any way or to any extent liable to B. C. Hartsook, administrator of D. J. Hartsook, on account of the judgment of Leonard Powell's executor against R. W. Elsom, D. J. Hartsook and Z. R. Lewis on account of payments made thereon by D. J. Hartsook; and they insist that from the evidence in the cause nothing should have been reported against Z. R. Lewis or the lands owned by him, or against any lands which have been aliened by him, on account of the said Powell judgment. The court below sustained this exception and decided that D. J. Hartsook was a principal obligor in the bond, and not a co-surety with Z. R. Lewis, and therefore not entitled to contribution from Lewis on account of payment made by him of the Powell judgment debt, nor by virtue of the assignment to him by Powell's executor.

From the facts disclosed by the record we think the circuit court decided rightly that D. J. Hartsook was a principal debtor in the Powell judgment, and is, therefore, not entitled to contribution from Lewis, the surety. It is true that after the signature of D. J. Hartsook to the bond on which the judgment was recovered he added the word "security"; but the facts of the transaction are that D. J. Hartsook had been the borrower of the money from Leonard Powell without security. Powell became uneasy and requested Hartsook to give security for the loan. He told Powell that he never gave security, and that, unwilling to make a precedent, he would rather pay him his money than do so. He greatly needed the money in his business, and he adopted the device of putting forward R. W. Elsom, his partner in the firm of R. W. Elsom & Co., as the apparent borrower of the money, he himself and Z. R. Lewis, his friend, to sign as securities. The money was, by Hartsook, paid over to Powell, by Powell it was handed to R. W. Elsom, and by Elsom it was handed to Hartsook, who thus, in fact, retained it and used it, and had the benefit of

it, as before, in the business of his firm of R. W. Elsom & Co. Hartsook was thus, in fact, the principal borrower, and Lewis had no benefit from it, being only security, at the request of Hartsook, for money borrowed by and used in the business of R. W. Elsom & Co.

It would accomplish a fraud through a court of equity to allow D. J. Hartsook—when in fact a principal debtor, and getting and using the money—by representing and signing as security, to exclude evidence of the actual truth and fact of the transaction, and compel Z. R. Lewis to reimburse him for money paid by him on his own debt. "It is a general rule that the true relation subsisting between several parties bound for the performance of a written obligation may be shown by parol evidence." Brandt Sur. 317, § 225. "A party signed a promissory note, and added the word 'security' after his name. It was held that it might be shown by parol that he was the principal. The addition of the word 'security' is, at most, the statement of a fact forming no part of the contract, and, if untrue, may be shown to be so by parol, as well as any other fact." Id. 23, § 17. See *Rose* v. *Madden*, 1 Kan. 445; *Adams* v. *Flanagan*, 36 Vt. 400; *Robison* v. *Lyle*, 10 Barb. 512. This court, in the recent case of *Harper* v. *McVeigh*, 82 Va. 751, decided that the addition of the word "security," or "surety," to the signature of a bond is *prima facie* evidence of the suretyship; but that it may be rebutted by proof to the contrary, and especially by proof that the party claiming to be surety got the benefit of the money individually, or as partner in a firm into whose business it went.

But even supposing D. J. Hartsook and Z. R. Lewis to have been co-securities for R. W. Elsom (which the record shows was not the case), D. J. Hartsook's administrator cannot now assert against Lewis, or his lands, a claim for contribution on account of payment of the Powell judg-

ment by D. J. Hartsook, and assignment thereof to him by Powell's executor. On the second day of March, 1868, nearly a year after said judgment had been rendered and docketed, the said R. W. Elsom was regularly adjudged a bankrupt, and as such he surrendered considerable real estate in Albemarle county and his interest in his wife's lands in Nelson county, which said lands were bound by the lien of the Powell judgment, as the primary security therefor; and the creditor, seeking in a court of equity to subject the lands of Z. R. Lewis, the security in the judgment debt, will be required first to subject and exhaust the real estate of R. W. Elsom, the principal debtor.

On the twenty-sixth day of August, 1868, all the property surrendered in bankruptcy by R. W. Elsom was conveyed by deed of assignment to P. A. Forbes, his assignee in bankruptcy. There were no proceedings in the bankrupt court for the sale of these lands free from liens. No order for their sale was ever made, either by the court or the register, except that on the twenty-fourth day of November, 1869, the register made an order providing that "the real estate of said bankrupt, when the same shall be offered for sale by the assignee thereof, be sold in lots or parcels as follows, viz: in lots or parcels as the assignee aforesaid may deem for the best interest of the creditors of the said bankrupt, one-fourth cash, and the balance on a credit of 6 and 12 months, with interest thereon from the day of sale, the purchaser giving bond with ample security for the deferred payments, and the title to be retained by the assignee until the whole of the purchase money shall have been paid." On the first day of March, 1870, the assignee sold R. W. Elsom's interest in these lands to D. J. Hartsook for $1,500, and he conveyed the same to said Hartsook by deed with special warranty on the twenty-eighth September, 1871. These lands (of which the Albemarle land alone was assessed in the year 1868 at

$4,006.25) thus passed into the hands of D. J. Hartsook, burdened and charged with the lien of the Powell judgment, and must be considered and treated by a court of equity as being in the hands of D. J. Hartsook for the satisfaction of that trust; and, having possessed himself of the property which was the primary security for the payment of the debt, the debt must be considered as extinguished. Neither Leonard Powell's executor nor Z. R. Lewis was party to the bankrupt proceedings, nor was served or affected with notice to show cause against a sale of the lands free of lien. The register had no power to sell free of liens, nor did he attempt to do so. The district court alone could exercise that power, and then only after the lien creditors have been served or affected with notice to appear and show cause against it. Bump. Bankr. (5th Ed.) 142, 377. Judge Hughes, in his opinion in *re Addison*, 3 Hughes, 433, speaking of the power of the court to sell the lands of a bankrupt, free of liens, says: "For obvious reasons the bankrupt court must reserve to itself in every case the decision of the question whether or not it will exercise this discretion, and therefore no assignee of a bankrupt can have power to sell real estate which is subject to liens, free of incumbrances, without a special order of court. The register has no power to confer such authority. The exercise of this authority involves considerations of great delicacy, inasmuch as it often produces a conflict of jurisdiction with other courts. The idea is not to be tolerated that any but the court itself may assume to exercise a jurisdiction so important and so responsible. This discretion reposed by law in the bankrupt court cannot be delegated by it, either by general rule or special order, to either the assignee or the register, much less can the discretion be assumed by either of these officers." See also *Ray* v. *Norseworthy*, 23 Wall. 128.

The United States district court is a court of record, and

in the *Elsom case* the proceedings show that the lien creditors were not convened, and that a sale free from liens was neither ordered by the court nor attempted by the assignee, nor claimed by the purchaser.

D. J. Hartsook held and owned some of this land at the time of his death in 1879, but he did sell and convey three parcels of it by deeds, of which copies are filed in this cause. The first of these deeds conveys a parcel of this land, September 9, 1873, to James L. Amiss, and contains the following covenant: " That the said James L. Amiss shall have full and fee-simple title to the same, as herein conveyed, as against all persons claiming by, through, or under him (Hartsook), but not against claimants, if any, under R. W. Elsom, bankrupt, as aforesaid." So it not only appears clearly from the record that D. J. Hartsook bought these Elsom lands incumbered with the lien of the Powell judgment, as well as all others, but the warranty in his deed shows that he so knew and considered it. Hartsook bought the Elsom lands for $1,500, subject to the liens upon it to pay Elsom's debts; he has alienated parcels of it by deeds which preclude him from enforcing the lien of the Powell judgment against the lands in the hands of his alienees, and he has held and enjoyed the residue of them for fourteen years; and now, after his death, his administrator sues the security (Z. R. Lewis) for the debt, without accounting for the Elsom lands in the estate of D. J. Hartsook, which were and are bound for the debt. Neither D. J. Hartsook, nor any claiming under him, can be allowed to say that the Elsom lands were not of value sufficient to pay this Powell judgment. He has enjoyed the fruits and profits of the property for fourteen years, which were properly applicable to satisfaction of this lien, and has placed parts of it where he cannot, by the proper proceedings to subject it to the lien, put it to the market test of its value; and even if the matter of its value were

now open to inquiry, the burden of proving its insufficient value would be on Hartsook, and it would have to be taken most strongly against him.    See Brandt, Sur. 498–9, §§ 370, 372.

The circuit court did not err in holding that the Powell judgment is satisfied and extinguished, and that there is no liability upon Z. R. Lewis or his land therefor.   See *Lowry* v. *McKinney,* 68 Pa. St. 294    The decrees complained of are affirmed, and the cause will be remanded to the circuit court of Nelson county, with directions to reform its order in accordance with the memorandum of agreement filed in the cause by counsel at the bar of this court, dated December 9th, 1886.

DECREE AFFIRMED.