## SHERMAN *v.* BLACK.

*Promissory Note.    Principal and Surety.*

Defendant signed a note with L., as it appeared from the face of it, as a principal with, but in fact as surety for, him. In order to procure it to be discounted, L. took the note to plaintiff, and asked him "if he would sign it with him and defendant," and plaintiff signed it, adding to his signature the word *surety*, supposing from the manner in which he was asked to sign it, and from its appearance, that he was signing as surety for both L. and defendant, and regarding them as principals. The note was discounted, and upon its maturity, L., having negotiated with the bank for renewal, drew another like it, procured defendant's signature thereto as before, and sent it to plaintiff, requesting him to sign and deliver it to the bank, and take up the former note, which he did, adding to his signature, as before, the word *surety*. *Held*, that plaintiff was surety for, and not co-surety with, defendant.

ASSUMPSIT.   The case was referred, and the referee reported, that the defendant and the plaintiff signed a ninety-day note for $1500 with Charles Livermore, under circumstances that are fully stated in the opinion; that Livermore paid $1000 on the note upon its maturity, and soon afterwards went into bankruptcy, and that the plaintiff, upon being pressed by the bank where the note was discounted, paid the balance — $506.22; that the plaintiff thereupon demanded of defendant the sum so paid, claiming to have been surety for both him and Livermore; that the defendant paid half of it, but refused to pay the remainder, claiming to have been a co-surety with the plaintiff; and that if the plaintiff was entitled to recover, he should recover $298.50 as of April 13, 1875.   The court, at the April Term, 1875, Windham County, WHEELER, J., presiding, rendered judgment on the report, *pro forma*, for the defendant; to which the plaintiff excepted.

*Charles B. Eddy*, for the plaintiff, cited *Keith* v. *Goodwin*, 31 Vt. 268; *Adams* v. *Flanagan*, 36 Vt. 400; *Melmes* v. *Werdehoff*, 14 Wis. 18.

*L. M. Read*, for the defendant, cited 1 Story Eq. Jur. 498; Burge Suretyship, 385; *Armitage* v. *Pulver*, 37 N. Y. 494; *Warner*

v. *Morrison,* 3 Allen, 566; *Deering* v. *Earl of Winchelsea,* 1 Lead. Cas. Eq. 100; *Harris* v. *Fergerson,* 2 Bailey (S. C.), 397; *Breckenridge* v. *Taylor,* 5 Dana (Ky.), 112; *Whitehouse* v. *Hanson,* 42 N. H. 9; *Norton* v. *Coons,* 3 Denio, 130; *McGee* v. *Prouty,* 9 Met. 547; *Wilson* v. *Foot,* 11 Met. 285; *Flint* v. *Day,* 9 Vt. 345; *Lathrop* v. *Wilson,* 30 Vt. 604; *Keith* v. *Goodwin,* 31 Vt. 268; *Adams* v. *Flanagan,* 36 Vt. 400; *Warner* v. *Price,* 3 Wend. 397; *Fletcher* v. *Grover,* 11 N. H. 368; *Harris* v. *Warner,* 13 Wend. 392; *Cutter* v. *Emery,* 37 N. H. 576; *Tappin* v. *Broster,* 1 C. & P. 112; *Child* v. *Mosley,* 8 T. R. 610; *Sills* v. *Laing,* 4 Campb. 81; *Stokes* v. *Laing,* 1 T. R. 20.

The opinion of the court was delivered by

REDFIELD, J. By the referee's report, it appears that the defendant signed a bank note with Charles Livermore, payable to the Ashuelot Bank, of Keene, N. H., for $1500, at ninety days. On the face of the note, apparently, both were principals. In fact the defendant was surety for Livermore. The bank refused to discount the note without the name of some responsible citizen of New Hampshire. Livermore then applied to the plaintiff, a resident citizen of Keene, and told him that the bank had refused to discount said note, and asked the plaintiff " if he would sign the note with him and Black;" thereupon plaintiff signed the note, adding the word *surety* to his signature; and then supposed that he was signing said note as surety for Livermore and Black, regarding them both as principals in the note. This supposition arose from the manner he was asked to sign the note, and that, apparently, on the face of the note, both were principals. Livermore negotiated with the bank for renewal; and when the note became due, he procured the signature of Black with him, to a like note, and sent it, with the money for the accruing interest, to the plaintiff, requesting him to sign it and deliver it to the bank, and take up the former note, which he did, adding, as before, to his signature the word *surety.* The bank about a year before had discounted a note signed only by Livermore and Black.

From this statement, it may be, as we think, justly assumed that the defendant entrusted the note for which this was substi-

tuted, with Livermore for discount, expecting to stand as the sole surety; and that, in fact, plaintiff undersigned Livermore and defendant as their surety, not knowing, and having no reason to believe that the defendant stood in any other relation than the note indicated, a principal in the note; and he qualified the contract he entered into, by adding to his signature the word *surety*.

It is well established, and all the authorities concur, that an indorser or surety may, at the time of entering into the contract, qualify or limit his liability at his pleasure. The defendant sent his note into the market, to raise money by Livermore, promising with him, as joint principal, to pay the note; and as between him and Livermore, agreeing to pay the note in case Livermore failed to do so. Livermore failed to pay the whole note; and defendant is now called upon to do just what his contract required, and what he understood it required when he put his note upon the market to raise money; his risk has not been enhanced, nor his duties changed.

Testimony *aliunde* is necessarily admissible to show the relation of the parties as between themselves; and that testimony shows in this case, that defendant had none of the money, and as between him and Livermore, was mere surety; and the same evidence discloses that the plaintiff signed, in fact, as surety for, and not as co-surety with, the defendant. Had the plaintiff attached to his signature the words, "surety for the above," or words of like import, it is not questioned that he would not be liable as co-surety, to contribute.

In *Keith* v. *Goodwin*, the court, REDFIELD, C. J., says: "When there is anything in the form of the contract or the nature of the transaction, to show that the subsequent sureties did not expect to be holden as co-sureties for all the former signers, they are entitled to full indemnity from each of the others, or all jointly; as, when the surety signs expressly as surety for all the above-signers; or when he signs, saying he is willing to be responsible for all of them. In such case he is not liable to contribution." In that case the defendant Goodwin stood apparently a joint principal on the note, though in fact a surety as

between the signers; and the court further says: "And by presenting the note merely, and asking a guaranty of the plaintiff, a virtual representation was made that defendant stood as joint principal." "If he could be allowed, afterwards, to falsify this representation thus held out on the face of the paper, it might certainly work great injustice to the guarantor." In the leading case of *Claythorne* v. *Swinburn*, 14 Ves. 160, the declarations of the defendant at the time he signed the note were admitted, to show that he signed as surety for the former signers, and not as co-surety with them.

The case of *Adams* v. *Flanagan*, 36 Vt. 400, goes still further. The plaintiff signed the note as surety, and added the word *surety* to his signature. Afterwards, Flanagan signed it and added the word *surety* to his name. The defendants were permitted to successfully resist the claim for contribution by Adams, who had paid the debt, by showing that he told Mills, the principal, at the time of signing the note, that he signed the note as surety for all, and not as co-surety with them. Flanagan, in this case, had distinct knowledge from the face of the paper, that Adams was surety. Opposed to this doctrine is the case of *Whitehouse* v. *Hanson*, 42 N. H. 9, and *Norton* v. *Coons*, 3 Denio, 130, and some others.

We have no occasion in this case, to approve or disapprove all that is *said* by the court in *Keith* v. *Goodwin* and *Adams* v. *Flanagan*. But we think that, as defendant signed the note apparently as principal, and authorized Livermore to go into the market with the note to raise money, and to accomplish the matter in hand, he procured the plaintiff to become surety for the two by virtually representing to him that the signers of the note were both principals. The fact that defendant was really the surety of Livermore, will not so operate as to make the plaintiff his co-surety. By the course of business, Livermore was authorized to do all that he has done; and the defendant should be required to stand by it, for it requires of him no more than he voluntarily agreed to do. If it were otherwise it would work a great fraud upon the plaintiff. This rule is entirely in accordance with the

adjudged cases and long-settled doctrine in this state, and with fair dealing and justice.

Judgment reversed, and judgment for plaintiff on the report for the sum therein named, with interest.