Baldwin v. Fleming.

———◆———

No. 10,538.

## BALDWIN v. FLEMING.

PRINCIPAL AND SURETY.—*Co-Sureties.* —*Contribution.*—*Presumption.*—*Evidence.*—In an action on a promissory note against the makers, it having been established that the last two of the four signers of the note were sureties thereon, it was

*Held,* that the presumption arose that said sureties were co-sureties, and were bound to contribution, but that such presumption might be overthrown by parol evidence, and the last signer might thus be shown to be, in fact, a surety for all the other makers.

SAME.—*Right of Surety to Fix His Liability.*—Where a promissory note has been signed by a surety and entrusted by him to a principal maker, who thereafter obtains the signature of another surety thereon, the latter surety has a right to determine for whom he will become surety, and to fix the nature of his liability as between himself and the prior makers; and by agreement, written or parol, express or implied, between him and said principal, the liability of said subsequent signer may be made that of surety for all the makers who have signed before him, without any agreement or communication between him and such prior surety or the payee, and without the knowledge of such prior surety, of whose suretyship said subsequent signer has notice when he signs.

SAME.—*Affixing the Word " Surety.*"—The addition of the word "surety" to his name by one who signs a promissory note after the signatures of other makers, without his specifying for whom of such prior signers he intends to become surety, will not alone rebut his implied promise to contribute as a co-surety with prior sureties on such note.

SUPREME COURT.— *Weight of Evidence.*—Before the Supreme Court can disturb the finding of the trial court upon a question of fact, it must be convinced that the conclusion reached was wholly unsupported by the evidence.

From the Warren Circuit Court.

J. W. *Sutton,* J. *McCabe* and E. F. *McCabe,* for appellant. W. P. *Rhodes* and W. L. *Rabourn,* for appellee.

BLACK, C.—In an action brought by William Cameron against Albert B. Baldwin, Ralph Baldwin, Silas Baldwin and Frank C. Fleming, on a promissory note, payable to said Cameron, dated November 23d, 1880, and signed by said defendants in the order in which their names are above set out, the word " surety " being affixed to the name of said Fleming, the last signer, the question of suretyship was presented by the pleadings as follows: Silas Baldwin, the appellant, by his cross complaint, alleged that he executed the note as surety for Albert and Ralph Baldwin. The appellee, by his cross complaint, which the appellant, by his answer thereto, denied, alleged that the appellee was surety for all the other makers of the note. Ralph, by his answers to these cross complaints, admitted that the appellant and the appellee were sureties on the note.

A return of " not found " as to Albert was suggested on the record.

The court tried the cause and found that Ralph was principal in the note, that Silas was his surety thereon, that, as to Fleming, Ralph and Silas were both principals, and that Fleming was surety on the note for both Ralph and Silas; and it was adjudged that the property of Ralph be first exhausted before proceeding against Silas, and that the property of both Ralph and Silas be first exhausted before proceeding against Fleming.

A motion for a new trial, made by the appellant, was over-ruled, and this ruling is assigned as error. The only question before us is, whether the finding was sustained by sufficient evidence. The evidence may be stated in small space.

The appellee introduced the note and testified as follows: "The defendant Albert B. Baldwin asked me to sign the note in suit. I declined to do so, but told him I would if he would get his father, Silas Baldwin, on the note. He afterward brought the note to me with his father's name to it. I then signed the note. All the other parties had signed the note before I signed it. I think it was the day before that the others signed. When I signed the note, I signed as surety for all the other parties. I had no communication with any one about the note but Albert B. Baldwin. The note was given for a livery stable that Albert B. Baldwin and Ralph Baldwin were buying of William. Cameron. That I understood when I signed the note. I did not know whether Silas Baldwin was one of the purchasers of the stable or not."

Ralph Baldwin testified: "I executed the note in suit as one of the principals. My brother, Albert B. Baldwin, was also a principal in the note. The note was given for a livery stable my brother and I bought of William Cameron. I and my brother Albert were the principals; we received all the consideration for the note. Silas Baldwin and Frank C. Fleming were sureties on the note. I was not present when Fleming signed the note."

The appellant testified: "Ralph Baldwin brought the note to me to go on it as security for him. He said Albert would get Fleming to go security on the note for Albert. I told Ralph to put my name to the note. I never received any part of the consideration for the note. The note was given for a livery stable bought by Albert B. Baldwin and Ralph Baldwin of William Cameron. I am only security on the note."

The appellant introduced in evidence a mortgage of an undivided one-half interest in a portable steam-engine and a separator, executed February 5th, 1881, by Albert B. and

Ralph Baldwin, to the appellee, the condition therein stated being, "that, whereas the said Frank C. Fleming is surety for the said Albert Baldwin and the said Ralph Baldwin, wherein they are indebted to one William Cameron in the sum of six hundred dollars, by a promissory note," etc., describing the note in suit: "Now, if the said Albert Baldwin and the said Ralph Baldwin shall well and truly pay said note," etc. This was all the evidence.

The fact being established that both the appellant and the appellee were sureties on the note, the presumption arose that they were co-sureties, and bound to contribution. By parol evidence, this presumption might be overthrown, and the appellee might be shown to be, in fact, a surety for all the other makers. *Oldham* v. *Broom*, 28 Ohio St. 41, 48.

The appellee had a right to determine for whom he would become surety, and to fix the nature of his liability as between him and the other makers. By agreement, written or parol, express or implied, between the appellee and the principal entrusted with the note by the appellant after he had signed it, the appellee's liability might be made that of a surety for all the other makers, without any agreement or any communication between the appellee and the appellant or the payee, and without the appellant's knowledge. See *Oldham* v. *Broom, supra*; *Adams* v. *Flanagan*, 36 Vt. 400; *Sherman* v. *Black*, 49 Vt. 198; *Bowser* v. *Rendell*, 31 Ind. 128; *Bobbitt* v. *Shryer*, 70 Ind. 513.

The chattel mortgage was executed long after the execution of the note, and the appellant was not a party to it. It, indeed, contained nothing necessarily inconsistent either with the claim that the appellee was surety for all the other signers of the note, or the proposition that he was a co-surety with the appellant. It could not affect the question of the relation of the parties here in dispute.

If the appellee had notice that the appellant was a surety, this would not prevent the former from restricting his liability as he now claims to have done. The addition of the word "surety" to his name, without specifying for whom he became

Baldwin *v.* Fleming.

surety, would not alone rebut his implied promise to contribute as a co-surety with any prior sureties. That addition was not inconsistent with an understanding on his part that one of the prior signers was a surety and an agreement to be his co-surety. If he believed, and under the circumstances had a right to suppose, that all the prior signers were principals, the addition of the word " surety " to his name might, perhaps, be regarded, in connection with other facts, as a manifestation of an intention to become a surety for all the other makers. *Sherman* v. *Black, supra.*

The appellant signed the note in form as a principal, and entrusted it with one of the principals. The conversation between the appellant and Ralph, when the former authorized the placing of his name upon the note, does not appear to have been reported to the appellee, and he was not affected by it. There was no communication between the appellee and any of the parties except Albert.

The appellee had the burden of rebutting an equitable presumption, of contradicting an implied assumpsit. Whether he did so depends upon the proper construction to be placed upon what was said and done at the two interviews between him and Albert, considered together with the understanding in regard to the circumstances shown to have been had by him when he signed. He understood that the note was given for a livery stable which Albert and Ralph were buying of the payee. He did not know whether Silas was one of the purchasers or not; his understanding, however, appears to have been that Albert and Ralph were buying it, and this was true. He seems, from the evidence, to have signed with the belief that the consideration for the note passed to Albert and Ralph; Albert asked the appellee to " sign the note; " the appellee, in answer, said that he would do so if Albert would get the appellant " on the note." The next day after this conversation, the note was taken by Albert to the appellee with the appellant's name on it, and the appellee then signed it, adding the word " surety " to his name.

Aside from the statement of the appellee as a witness, that he signed as surety for all the other parties, it seems that all that was shown to have been said and done was consistent with a purpose on the part of the appellee not to become a surety, unless the appellant would first go on the note as a surety, and an understanding on the part of the appellee that the appellant did become a surety, and consistent also with a presumption that the appellee signed as a co-surety.

But the question whether the appellee signed as surety for all the other makers was a question of fact, to be decided by the trial court according to the preponderance of the evidence before it. If there was any testimony tending to support the finding, we can not weigh the evidence for the purpose of determining the preponderance. The testimony is set out in form as above quoted. The appellee was cross-examined as a witness, but what questions were propounded to him or to the other witnesses we do not know. We can not pass upon the admissibility of any of the evidence. Whether there was any conversation, and if so, what was said when the appellee signed the note at the second visit of Albert, is not shown. But the appellee, without objection, testified that he signed the note as surety for all the other parties. This was the fact disputed by the appellant, who permitted the appellee to so testify without interrogating him as to what was said at the meeting at which the appellee signed the note.

We can not say that the court could not consider this statement of the appellee as a part of the evidence on which to base its finding. It must be regarded by us as evidence tending to sustain the finding.

We do not regard the case as free from doubt, but before we can disturb the finding of the trial court upon a question of fact, we must be convinced that the conclusion reached was wholly unsupported by the evidence.

The judgment should be affirmed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be affirmed, at appellant's costs.