## McCollum v. Boughton, *Appellant.*

### In Banc, March 3, 1896.

1. **Deed of Trust:** HUSBAND AND WIFE: SURETY.  Where real property (not separate estate) of a wife was incumbered by deed of trust to secure payment of a note signed by her husband and several other parties, it was *held* that, as between the wife and one of the signers of the note, the latter was first liable to respond for the indebtedness, even although he had joined in the note as surety for the husband, and the wife knew of that relation between those parties to the note.

2. ———: ———: ———.  A party may become surety for a surety; and, as between themselves, the court will enforce whatever contract sureties may make touching their respective liability to answer for the debt secured.

3. ———: ———: ———.  Where land of a wife is, by deed of trust, charged with the payment of a note made by her husband and other parties, in case of default of payment thereof by them, the land stands in the relation of security to the note and its makers.

4. ———: ———: ———.  Where a party first liable to respond to a debt, secured by deed of trust, purchases at trustee's sale the land conveyed by such deed, he can not, in the circumstances described in the opinions, recover the land of one of the grantors in the deed, where the latter is only secondarily liable for the debt secured.

5. **Contract:** SURETIES INTER SESE.  In ascertaining the relations and liabilities of sureties among themselves, the true test is the intention of the parties as evidenced by their agreements.

6. **Husband and Wife:** WIFE'S GENERAL ESTATE: SURETY.  A husband is not authorized, merely by reason of his marital relation, to enter into stipulations binding upon the wife in respect of property forming part of her "general or legal estate."

7. ———: ———: ———: MORTGAGE.  In 1888 a wife (joining her husband) might lawfully mortgage her legal estate in land to secure an obligation of her husband and other parties, by complying with the statutory requirements.

8. ———: DEED OF TRUST: SURETYSHIP: ORAL AGREEMENT.  The liability of a wife as surety for her husband and others by deed of trust (in the circumstances shown in this case) can not be enlarged by oral evidence of an oral agreement or understanding to that effect had before, or at the execution of that instrument.

9. **Practice**: PLEADING: ACTION AT LAW: EQUITABLE ANSWER: APPEAL: INSTRUCTIONS. An equitable answer in an action at law converts it into a proceeding in equity, and, on appeal in such case, it is wholly unnecessary to consider declarations of law given or refused.

10. —————: —————: SEVERAL DEFENSES: EJECTMENT: EQUITABLE DE-FENSE OF CONTRIBUTION. A defendant may set up as many defenses as he may have (R. S. 1889, sec. 2050) and in ejectment he may plead the equitable defense of contribution.

11. —————: EQUITY: JURISDICTION. When a court of equity has once become possessed of a cause it will retain control of it until it has accomplished complete justice between the parties.

*Appeal from Stoddard Circuit Court.*—W. C. Brown, Esq., Special Judge.

Reversed and remanded.

### DIVISION ONE.

The material parts of the deed of trust mentioned in the opinion are as follows:

"This deed, made and entered into this 24th day of August, one thousand, eight hundred and eighty-eight, by and between Geo. N. Boughton and Callie G. Boughton, his wife, of the first part, and F. M. Ladd, of the second part, and Chas. D. Mathews, of the third part,

"*witnesseth*: That the parties of the first part, in consideration of the debt and trust hereinafter mentioned and created, and the sum of one dollar to them paid by the said party of the second part, the receipt of which is hereby acknowledged, do by these presents grant, bargain and sell unto the said party of the second part, and to his heirs and assigns forever, the following described tract of land, situated in the county of Stoddard and State of Missouri, to wit:" (Here follows description.)

"The said Geo. N. Boughton and Callie G. Boughton remain in possession of said premises as tenants of

said F. M. Ladd, and in the event of a sale, however, we hereby covenant to quit and deliver possession thereof to the purchaser, without notice to quit, with all the rights, privileges, and appurtenances thereto belonging."

"In trust, however, for the following purposes: Whereas, the said Geo. N. Boughton and others did on the 24th day of August, 1888, make and deliver to the said C. D. Mathews a promissory note as follows:

" '$1,500.    SIKESTON, Mo., August 24, 1888.

" 'Two years after date we promise to pay to C. D. Mathews, or order, fifteen hundred dollars ($1,500), for value received, with ten (10) per cent per annum thereon from date, which interest shall be due and payable annually; and if interest is not paid annually the same shall become a part of the principal, and bear interest at the same rate.

(Signed by)              " 'GEO. N. BOUGHTON,
                ·        " 'THOS. J. ULEN,
                         " 'J. W. McCOLLUM, and
                         " 'E. J. MALONE.' .

"And whereas, for the purpose of better securing said indebtedness, said parties of the first part contract and agree:"

(Then follows a number of agreements regarding taxes, insurance, and liens.)

"Now, if said promissory note shall be paid at maturity, and if the covenant aforesaid shall be met and truly kept, and all amounts expended as aforesaid shall be refunded and paid to the said party of the third part, or his assigns, by the said party of the first part, or their legal representatives, then the property hereinbefore conveyed shall be released at the cost of the said parties of the first part; but if said promissory note, or either or any part of any one of them, shall be allowed to remain due and unpaid, or in case of pay-

ment of any amount expended as aforesaid shall not be made, or in case of said covenants, or any part thereof, shall not be fully kept, then this deed shall remain in force, and the said party of the second part, or in case of his death or absence from the state of Missouri, or failure or refusal to act, then the sheriff of the county of Stoddard, in the state of Missouri, acting as such for the time being, may proceed to sell the property hereinbefore described, or any part thereof, at public vendue, to the highest bidder, at the court-house door in the county of Stoddard, state of Missouri, for cash, first giving thirty days' public notice," etc.

(Then follows a number of the usual stipulations in regard to sale by trustee, application of proceeds, and maturity of whole debt in case of failure to meet any installment when due, etc.)

"In witness whereof, the parties have hereunto set their hands and seals the day and year aforesaid.

      "GEO. N. BOUGHTON. [SEAL]

      "CALLIE G. BOUGHTON. [SEAL]"

Acknowledged in due form, August 24, 1888, and filed for record, August 29, 1888. The other material facts appear in the opinion.

*C. L. Keaton* and *J. J. Russell* for appellant.

(1) The sale under the deed of trust was void, and the deed thereunder passed no title to plaintiff. *Siemers v. Schrader*, 88 Mo. 20; *Bank v. Stumpf*, 73 Mo. 311; *Schanewerk v. Hoberecht*, 117 Mo. 22. (2) This deed of trust specified on its face that, "For the purpose of better securing said indebtedness," etc., so that the makers of the note, including plaintiff, were primarily liable in the premises. *Henry v. Sneed*, 99 Mo. 407. (3) At most, Mrs. Boughton, defendant, not being a party to the note, could not be held to be more than a

cosurety, and her property could not be taken to pay the whole debt, otherwise it would be a fraud on her rights.   She should be required to do no more than to contribute.   And any defense that could have been made to prevent the sale of the land can still be made under her equitable answer in this case to prevent injustice and multiplicity of suits, as the makers of the note bought and plaintiff, one of them, took the deed to the same from the trustee, and a court of equity will still do justice between the parties.   46 Mo. 557. (4) The plaintiff must recover on the strength of his own title and can not recover against defendant in this action over her equitable answer upon a defective, fraudulent, oppressive, or void title fraught with injustice to the defendant in the premises.   And the court permitted witnesses to testify to agreements made with Geo. N. Boughton in defendant's absence as to this property being first liable for this debt.   This was incompetent and very prejudicial to defendant's rights to a court that believed the same to be material, and changes the written instruments.   *Biers v. Wolf*, 116 Mo. 179; *Harding v. Wright*, 24 S. W. Rep. 211; *Ford v. French*, 72 Mo. 250; *Dunlap v. Henry*, 76 Mo. 106; *Henry v. Sneed, supra; Riddle v. Ramsey*, 52 Mo. 153.   (5) The payment of the note by plaintiff, a comaker thereof, extinguished the deed of trust. *Johnson v. Johnson*, 81 Mo. 336; *Hagerman v. Sutton*, 91 Mo. 519; *Meads v. Hutchinson*, 111 Mo. 620; 119 Mo. 280.

*J. L. Fort* for respondent.

(1) A married woman in Missouri may, by joining with her husband as prescribed by our statute of conveyances, execute a valid mortgage or deed of trust upon her legal real estate to secure a debt of her hus-

band, and may appoint therein a trustee to make sale of the property in default of payment of the debt secured. *Schneider v. Staihr*, 20 Mo. 269; *Hagerman v. Sutton*, 91 Mo. 519; *Rines v. Mansfield*, 96 Mo. 394; *Wilcox v. Todd*, 64 Mo. 390; *Ferguson v. Soden*, 111 Mo. 208; *Meads v. Hutchinson*, 111 Mo. 620; *Comings v. Leedy*, 114 Mo. 454. (2) And such mortgage, or deed of trust, is valid and binding upon the *feme covert*, notwithstanding the note secured by the mortgage is void as against her. *Hagerman v. Sutton*, 91 Mo. 519; *Rines v. Mansfield*, 96 Mo. 394; *Meads v. Hutchinson*, 111 Mo. 620; *Comings v. Leedy*, 114 Mo. 454. (3) Where a married woman and her husband mortgage the legal real estate of the former to secure the debt of the latter the wife occupies the attitude of a surety toward her husband. *Wilcox v. Todd*, 64 Mo. 388; *Mayes v. Robinson*, 93 Mo. 114. (4) There is no evidence in this record that the respondent was a comaker or a cosurety on the note. His contract was to pay if Geo. N. Boughton and the deed of trust failed to pay. Brandt on Suretyship and Guarantee [2 Ed.], section 265; *Adams v. Flanagan*, 36 Vt. 400; *Keith v. Goodwin*, 31 Vt. 269; *Sherman v. Black*, 49 Vt. 198; *Oldham v. Brown*, 28 Ohio St. 41; 24 Am. & Eng. Encyclopedia of Law, p. 815, note 5. (5) Appellant executed the deed of trust without any understanding that respondent should sign the note which it was intended to secure. When she executed the deed of trust and delivered it to her husband her liability to pay the entire debt was attached. Geo. N. Boughton had authority to negotiate it in that condition, or, if not acceptable to the creditor, to obtain other signatures to make it so, and might therefore accede to conditions on which others were willing to sign. When this note was presented to respondent for him to sign he was under no obligations to appellant to sign it.

McCollum v. Boughton.

She had already executed the deed of trust and was already liable for the entire debt. Therefore any limitations that respondent placed on his contract of suretyship could not affect appellant's rights. Hence it was competent for respondent to make the contract as he did, and what he said to Geo. N. Boughton at the time about it, is competent as part of the *res gestae* to show his relations to the note. *Oldham v. Brown*, 28 Ohio St. 41, and cases cited on pp. 52, 53. (6) This is not a suit in equity. *Carter v. Prior*, 78 Mo. 222; *Estes v. Fry*, 94 Mo. 266. If it is a suit in equity then appellant will have to stand or fall on consistent defenses. She can not deny the validity of the respondent's title and at the same time claim contribution. She can not claim under and against the sale. *State to use v. Koch*, 47 Mo. App. 269; *Tracy v. Cover*, 28 Ohio St. 61; *Skrainka v. Rohan*, 18 Mo. App. 340.

BARCLAY, J.—The petition is in ejectment for certain lots in the town of Dexter, Stoddard county, Mo. It follows the usual statutory form, and lays the ouster, September 21, 1890.

The answer denies the petition, in general terms, and then sets up a defensive state of facts, which will be discussed further along.

The plaintiff filed a reply bringing into the case more new matter, the nature of which will soon appear.

A trial came on in due course, resulting in a finding and judgment for plaintiff, from which defendant appealed, after the usual motions and exceptions to preserve her rights for review.

The defendant was the owner of the property in suit when the deed of trust upon whose effect this appeal must turn was given. As she charges in her answer, and the evidence of both parties shows, she is a married woman, and was such at all the dates men-

tioned in the case.  The property belonged to "her general estate," as the plaintiff's evidence disclosed.

The deed of trust which she and her husband executed, August 24, 1888, was duly acknowledged by both of them.  In August, 1890, Mr. Boughton disappeared, and the note described in the deed of trust was not paid at maturity.  The trustee, Mr. Ladd, after the usual preliminaries, put up the property to be sold, in conformity to the deed, to meet the demands of the trust, September 19, 1890.  The land was bid in for $1,691.40 by an attorney representing the plaintiff as well as Messrs. Ulen & Malone.  These three made such an adjustment of the matter between themselves that the trustee's deed, September 20, 1890, was finally made to Mr. McCollum, the present plaintiff, who was also one of the signers of the note secured.

The defense stated in the answer is based upon these facts, somewhat elaborated.  Defendant's contention is that plaintiff and the other signers of the note are primarily liable, and that they should respond for the debt which the note represents before her estate can be held for it.

The plaintiff meets this claim with a charge in his reply that he and all the signers of the note, except Mr. Boughton, were merely sureties for the latter, and that it was expressly agreed between Mr. Boughton and them, before the note was signed, that they were not to be liable until the security afforded by the deed of trust was exhausted.  Other matters are sated in the reply, but, in the view we take of the admitted facts it will not be necessary to go further into the particulars of the pleadings.

At the hearing on the circuit, the court, over defendant's objection and exception, admitted proof that plaintiff and the last three signers of the note executed it as sureties for Mr. Boughton, and upon the

faith of the deed of trust which had been prepared before the note was actually executed.

But no person testified or asserted that Mrs. Boughton, the defendant, was even present when Mr. Boughton made the agreement to stand as primary debtor, as between the note signers, or that she ever made any such agreement to that effect herself with plaintiff, or with her husband, or with any of the signers of the note, other than as appears in the deed of trust.

It may be assumed that the evidence tends to prove that defendant knew that the money represented by the note was borrowed and used by Mr. Boughton alone.

The question then is, what are the relations between Mrs. Boughton and the plaintiff, as one of the makers of the note, touching liability for this debt, on the facts above disclosed.

On the face of the deed of trust, the land of Mrs. Boughton was pledged to secure payment of the note, as described in that instrument. The land was part of defendant's "general estate," as her counsel describe it, or of her "legal estate," as plaintiff's counsel assert.

No claim is made that the land was her separate state, though the date of its acquisition by her is not clearly given.

Whatever the nature of her estate, it is not claimed that she entered into any agreement that affects her rights touching the subject-matter of this suit, other than the one embodied in the deed of trust, even if she had power to make such an agreement.

Her land, by virtue of that deed, was pledged as a security, to be resorted to if said promissory note should "be allowed to remain due and unpaid." *Hagerman v. Sutton* (1887) 91 Mo. 519 (4 S. W. Rep. 73);

*Barrett v. Davis* (1891) 104 Mo. 549 (16 S. W. Rep. 377).

But in the note all the signers were ostensibly principals; and, as between the defendant's land and the makers of the note, the latter were primarily liable, according to the deed of trust.

It may be conceded that, as between Mr. Boughton and the other signers of the note, he was primarily liable, and that they were merely sureties, by reason of their agreement to that effect at the time of giving the note. But that relation between the signers of the note did not necessarily change the order of liability between them as the makers of the note (whether as principal or sureties) and the defendant, as the owner of the land pledged as security for the payment of the note, without other stipulations than those contained in the deed of trust.

Mr. Boughton was not authorized merely by reason of his marital relation to defendant, to enter into other agreements on her behalf altering her liability as expressed in the deed of trust. *Wilcox v. Todd* (1877) 64 Mo. 388; *Henry v. Sneed* (1889) 99 Mo. 407 (12 S. W. Rep. 663).

No other authority or agency on his part to speak for her on that topic is even suggested.

She may have known that her husband was in fact principal and the others sureties upon the note. But it is entirely competent for one person to become surety for another surety, or to limit the extent or sequence of his liability with respect to other sureties. Such agreements will be enforced as made.

The true test of liability in these cases is the intent of the parties, as indicated by their mutual agreements. *McNeilly v. Patchin* (1856) 23 Mo. 40. Here the defendant's attitude toward the parties who signed the note is defined by the deed of trust. Whatever be the

relations of those signers to each other, there can be no substantial doubt that the relation of the defendant's land to the note, as it stands, is that of surety for the payment of the note.   See the *Hagerman* and *Barrett* cases above cited.

In *Harris v. Warner* (1835) 13 Wend. 400, one signed a note as "surety for the above names," following four other signatures, to three of which the word "surety" was added, while the other (that of the principal) stood alone; and it was held that the last signing surety was not bound with those whose names preceded his, but that he was liable only after them.

That ruling was afterwards followed in the same state by *Sayles v. Sims* (1878) 73 N. Y. 551. Many other cases illustrate the same principle. *Craythorne v. Swinburne* (1807) 14 Ves. 160; *Dawson v. Pettway* (1839) 4 Dev. & B. 396; *Sherman v. Black* (1876) 49 Vt. 198; *Moffitt v. Roche* (1881) 77 Ind. 48; *Baldwin v. Fleming* (1883) 90 Ind. 177.

It is wholly immaterial, in view of the terms of the deed of trust, that defendant was aware that her husband was the primary debtor, as between him and the other signers of the note.   It was competent for her, with such knowledge, to pledge her estate as surety for their payment of the note, even in the capacity of sureties for her husband, as principal, which the instrument executed by her in effect did.   *Chapeze v. Young,* (1888) 87 Ky. 476 (9 S. W. Rep. 399).

Whether the case be viewed as legal or equitable in its nature, it is very clear that no person liable on the note can compel payment of the note from the land pledged only to respond for the debt in event the note should not be paid, according to its promise.   *Freeman v. Moffitt* (1893) 119 Mo. 280 (25 S. W. Rep. 87). By the terms of the deed of trust, the plaintiff is liable

to answer for the debt represented by the note, before the land can be resorted to for payment.

On the facts established by plaintiff's own evidence, the learned trial court should have found for the defendant, under the law as contained in the first instruction asked by her. It committed error in not so finding; and it is wholly unnecessary to consider any question as to the form in which the case was dealt with on the circuit.

The judgment is reversed, and the cause remanded, with directions to enter judgment for defendant.

MACFARLANE and ROBINSON, JJ., concur; but BRACE, C. J., dissents.

### IN .BANC.

BARCLAY, J.—Since the transfer of this cause to the court in banc we have been favored with an opinion of our learned brother GANTT upon which he would reach a judgment affirming that of the circuit court. His comments on the case seem to call for a few remarks supplemental to the opinion delivered May 14, 1895, in the first division (30 S. W. Rep. 1028).

Our learned brother advances the proposition that Mrs. Boughton and the plaintiff should both be treated as sureties for Mr. Boughton, her husband.

That opinion is based upon two distinct grounds, if we correctly analyze the reasoning: first, that the legal effect of the instruments was to make her a surety for her husband; and, secondly, that "it was entirely competent to receive parol evidence of the collateral contract between Boughton and the plaintiff, McCollum, Ulen, and Malone, that they were only sureties for Boughton."

We will examine each of these grounds.

1. By the terms of the deed of trust Mrs. Boughton was, no doubt, surety for her husband, as he was

one of the signers of the secured note.   But that prop-
osition is stated, and used, as though she became
surety for her husband only, and not surety for the
note with its other signers besides her husband.
According to the deed, her land became bound for the
payment of the note by those whose promise to pay it
contains, namely, the four makers, of whom Mr.
Boughton was but one.   If (as my brother GANTT
appears to intimate) the deed of trust made her surety
for her husband only, then the conclusion he points
out might follow.   But that interpretation of the deed
is erroneous.   The error, too, is a radical one.   It
vitiates the whole argument that our learned brother
has founded upon it.

The decision cited to confirm it ( *Wilcox v. Todd*,
64 Mo. 388) deals with a case in which a husband
(alone) borrowed money, and, to. secure his debt, he
and his wife joined in a deed of trust conveying a
piece of land belonging to the wife, as well as another
piece belonging to the husband: it was held that she
was surety for her husband as to her piece of land so
conveyed.

That case falls far short of deciding that the legal
effect of the instruments (namely, the note and deed of
trust in this case) was to make her a surety for her hus-
band, if by that statement the husband alone is meant.

The effect of those instruments seems to us quite
different.   The principle declared in the very prece-
dent cited sustains the conclusion we would reach on
the present appeal, provided we are right in interpreting
those instruments to mean this:   that Mrs. Boughton
conveyed her legal estate to secure payment of the
note by its signers.

If, as to her, all the makers of the note are prima-
rily liable, and her land is security for the debt repre-
sented by the note (which all of them signed), then

it must follow that no one of the makers of the note can eject her from the land by a title obtained through that very deed of trust.

The crucial question then is, what is the correct meaning of the deed of trust? Did it bind Mrs. Boughton's land to secure the debt of Mr. Boughton, or the debt of all the makers of the note?

Can there be any reasonable doubt that, on the face of that instrument, the land is conveyed in trust to secure payment of the note, and the note is recited as signed by four persons, of whom plaintiff is one and Mr. Boughton another? How then can it be properly held that all the signers of the note are not primarily liable, as against the land conveyed to secure it, when the terms of the deed make no distinction whatever between them in respect of their liability as makers?

So far as appears from the note and deed of trust all the makers of the note are principals. Its language is "we promise to pay," and all sign that promise. What rule of law justifies the holding that only one of these makers is the principal, and that the others are only sureties for that one, assuming now that we stick to the construction of the paper itself?

No word or suggestion in the deed of trust is pointed out to sustain the position that, on the face of that instrument, its legal effect was to make Mrs. Boughton's land any more a security for her husband than for the other signers of the note. That effect could be given it only if the law were such that she might mortgage her land to secure a debt of her husband, but not to secure the debt of anyone else. But there is no such distinction recognized by the law of Missouri. If a wife, at the time of the deed in question (1888), joined her husband in a conveyance of her legal estate, in the manner prescribed by the statute touching such instruments (R. S. 1879, sec. 669), the

conveyance could as validly secure a debt of a third party as a debt of her husband.

That proposition was assumed as the basis for the judgment reached in *Rines v. Mansfield* (1888) 96 Mo. 394 (9 S. W. Rep. 724), and there can be no doubt that it is a sound statement of the law in force in 1888.

There was nothing in our statute law at that time to forbid Mr. and Mrs. Boughton from mortgaging her land to secure the debt of third persons any more than there was to prevent them from mortgaging it to secure a debt of her husband. That they might mortgage it, in proper form, for the latter purpose, is settled in this state.

Hence we consider that, by the deed of trust, Mrs. Boughton bound her land as security to respond to the promise of the note as it stands; but not to respond for one only of the makers of that note.

2. We then come to the other contention, as to the admissibility of oral evidence, in such a case as this, to show that (as between themselves) Mr. Boughton was the principal debtor and the other signers of the note were his sureties.

My brother GANTT holds that it "was entirely competent" to receive such evidence, as against the defendant. We respectfully differ from that declaration.

We have nothing to do now with the question of the competency or relevancy of such evidence in a controversy between the parties to the note; and the discussion of such a question would be wholly foreign to the issues in the actual case in hand.

If on the face of the deed of trust Mrs. Boughton's land was security, and all the makers of the note were principals, that sequence in the order of liability could not be broken by oral evidence, as against her.

The deed of trust was made in 1888, and her rights thereunder were then fixed. The property was not her

separate estate. She could only bind her legal estate by the methods sanctioned by the law. Her rights and liabilities under the deed of trust were measured by its terms. They can not properly be enlarged as to her, by oral evidence to the effect that some of those who are stated in the deed of trust to be makers of the note are in reality (as between themselves) only sureties. As against the rights of a married woman to her legal estate such evidence is plainly inadmissible in this state.

That rule of law is so well settled in Missouri by prior decisions that it is not necessary to do more than to refer to a few of them. *Shroyer v. Nickell* (1874) 55 Mo. 264; *Hagerman v. Sutton* (1887) 91 Mo. 519 (4 S. W. Rep. 73); *Gwin v. Smurr* (1890) 101 Mo. 550 (14 S. W. Rep. 731); *Meads v. Hutchinson* (1892) 111 Mo. 620 (19 S. W. Rep. 1111).

The plaintiff's case, therefore, must at last be brought to book upon the interpretation of the deed of trust. In our opinion, with all due respect to the views of our dissenting brethren, when we reach that point the result that should follow seems very plain.

All the signers of the note are primarily liable to pay it before resorting to the wife's legal estate, conveyed to secure that note as described in the deed of trust.

We hold that the conclusion reached in the first division should not be disturbed; and, approving the opinion there delivered, we direct that the circuit judgment be reversed and the cause remanded as then ordered. BRACE, C. J., and GANTT and BURGESS, JJ., dissent. MACFARLANE, SHERWOOD and ROBINSON, JJ., concur.

ON MOTION FOR REHEARING.

SHERWOOD, J.—For lots 5, 6, and 7, in block 28, in the town of Dexter, McCollum brings ejectment against Mrs. Boughton, a married woman, who, it appears, lived upon the lots, her husband having left her and disappeared in 1890. In 1877 she bought the lots with money in part obtained from her mother's estate, and in part from the proceeds of her own labor. These lots, it is asserted by counsel for defendant, belonged to Mrs. Boughton's "general estate." It was her home, she having built a house thereon in 1880 at a cost of $1,500, of which she furnished $800 and her husband $700 at a time when he was free from debt.

This action had its origin in a deed of trust executed on the twenty-fourth day of August, 1888, on the lots aforesaid, by George N. Boughton and Mrs. Boughton, defendant, his wife. This deed of trust was in ordinary form, with George N. Boughton and his wife of the first part, E. M. Ladd of the second part, and Charles D. Matthews of the third part, and was given to secure the following note:

"$1,500.          SIKESTON, Mo., August 24, 1888.

"Two years after date, we promise to pay to C. D. Matthews or order, fifteen hundred dollars ($1,500), for value received, with ten (10) per cent per annum thereon from date, which interest shall be due and payable annually, and if interest is not paid annually the same shall become a part of the principal and bear interest at the same rate.

(Signed by)          "GEO. N. BOUGHTON,
                     "THOS. J. ULEN,
                     "J. W. McCOLLUM, and
                     "E. J. MALONE."

After the insertion of the note, then follow the usual clauses about the payment of taxes, insurance of the buildings, etc.   Then this common clause occurs:

"Now, if said promissory note shall be paid at maturity, and if the covenant aforesaid shall be met and truly kept, and all amounts expended as aforesaid shall be refunded and paid to the said party of the third part or his assigns by the said party of the first part or their legal representatives, then the property hereinbefore conveyed shall be released at the cost of the said parties of the first part; but if said promissory note, or either or any part of any one of them shall be allowed to remain due and unpaid, or in case of payment of any amount expended as aforesaid shall not be made, or in case of said covenants or any part thereof shall not be fully kept, then this deed shall remain in force, and the said party of the second part, or in case of his death or absence from the state of Missouri, or failure or refusal to act, then the sheriff of the county of Stoddard, in the state of Missouri, acting as such for the time being, may proceed to sell the property hereinbefore described," etc.

This deed was acknowledged by Boughton and wife on the twenty-fourth of August, 1888, the date of the note.

The answer of defendant was first a general denial, and then in substance sets up:   That at the time of executing the deed of trust she was and still is a married woman and still the absolute owner in fee simple of the property in dispute; that the deed of trust was made to secure the debt contracted and promissory note of plaintiff, Geo. N. Boughton, Thos. J. Ulen, and E. J. Malone for the sum of $1,500; that defendant was not a party to said contract and promissory note so made and executed by said parties aforesaid; that no part of the consideration realized out of the

deed of trust was received by her; that at most she was but a guarantor for the makers of said note, and the deed of trust was only collateral thereto; that plaintiff as one of the comakers of said note has paid off the note and thereby fully released her property; that the sale of the same was without lawful authority and is a cloud on her title. Then follows a prayer for the cancellation of the deed of trust, etc.

In his reply, plaintiff admits that his title rests on the sale under the deed of trust aforesaid, etc.; that such deed was made to secure the payment of the promissory note of Geo. N. Boughton, defendant's husband, for $1,500; that the note became due and on the nineteenth of September, 1890, Ladd, trustee, sold the premises and made deed to plaintiff; that plaintiff, Ulen, and Malone were not comakers of said note, but only sureties of Geo. N. Boughton on the same, etc.; that Geo. N. Boughton agreed with them before they signed the note that a deed of trust of the premises in dispute was to be made to Matthews to secure payment of the same; that when said parties plaintiff and others signed the note as sureties, the deed of trust was already made and executed and in the hands of Geo. N. Boughton; that it was the express agreement between Geo. N. Boughton, plaintiff, and the other sureties at the time of signing the note, that said sureties were not to pay any part of it until Matthews had first exhausted his remedies by selling the premises conveyed by the deed of trust and applying the proceeds on the note; that it was upon the faith of such agreement that plaintiff and the other sureties were induced to sign the note; that Geo. N. Boughton failed to pay the note and in consequence the premises were sold and plaintiff became the purchaser, etc. The reply then admits that defendant is a married woman and

had the legal title to the premises, and then denies new matter, etc.

At the hearing the common source of title was admitted, and the following evidence in substance and effect adduced: The deed of trust and the deed made by Ladd, trustee, to plaintiff.

Plaintiff then introduced his own testimony tending to support his reply and to show that an agreement was made between Boughton and himself whereby it was arranged by and between them that Boughton was to get Ulen and Malone to sign the note as sureties and plaintiff was to sign it also in that capacity, provided that Boughton would secure them on his home place; that on the twenty-fourth day of August, 1888, Boughton came bringing with him the deed of trust already executed and plaintiff signed the note, which had at that time only the names of Boughton and Ulen on it. Objections taken to plaintiff testifying as to any agreement made with Boughton, defendant not being present, and exceptions saved on its admission.

Ulen also gave similar testimony to that given by plaintiff, that when he signed the note the deed of trust was executed and in Boughton's hands, and only Boughton's name was on the note at the time witness signed his name, and objection was made as before stated to a certain portion of it.

Defendant testified that she never read the deed of trust; that the note was attached to that deed and that the signatures to the note were on it when she signed the deed of trust.

This is the substance of the evidence and a sufficiency of the pleadings bearing on the questions at issue.

1. The answer of defendant converted this action at law into a proceeding in equity, and therefore it becomes wholly unnecessary to consider declarations of

law given or refused. *Allen v. Logan*, 96 Mo. 591; *Wendover v. Baker*,121 Mo. *loc. cit.* 290, and cases cited; *Durfee v. Moran*, 57 Mo. 374; *Hodges v. Black*, 76 Mo. 537; s. c., 8 Mo. App. 389; *Ells v. Railroad*, 51 Mo. 200; *Savings Inst. v. Collonious*, 63 Mo. 290.

Notwithstanding this line of decisions, it is asserted "that the question of contribution can not be adjusted on these pleadings." *Why* it can not be we are not told, and no authority is cited in support of the assertion. In this state it is abundantly settled as seen by the cases heretofore cited, and by other adjudications, that an equitable defense can be set up in and to *any* action at law. These adjudications are bottomed on the express statutory provision that: "The defendant may set forth by answer as many defenses * *.* as he may have, whether they be such as have been heretofore denominated legal or equitable, or both." R. S. 1889, sec. 2050.

*Allen v. Logan, Durfee v. Moran, Ells v. Railroad,* and *Savings Inst. v. Collonious, supra,* were all actions of *ejectment,* and yet it was held that the answers being of an equitable nature, converted the whole proceeding into one in equity to be determined on grounds recognized and enforced in courts of chancery. If, then, this defendant has any ground on the facts stated to be heard in a court of equity, I can discover no reason why her rights should not be adjusted in the present action as well as in any other; nor why she should be turned out of court, mulcted in costs, and forced to institute an affirmative equitable proceeding at additional expense and further delay. The rule is that when a court of equity once becomes possessed of a cause, it will not let it go until it has accomplished complete justice between the parties; it will not kick a party out of one door and then invite him to come in at another; it will not take two bites at a cherry.

*Savings Inst. v. Collonious*, 63 Mo. *loc. cit.* 295, and cases cited.

2. Having thus disposed of these preliminary questions, it will be proper to examine the merits of the cause and of the defense set up by Mrs. Boughton as subsequent surety or guarantor.

Being the possessor of a mere *legal* estate under the married woman's act, she was powerless to bind or in any manner charge that estate except in the *precise method* authorized and pointed out by the law. This point has been so frequently and flat-footedly decided by this court that it would seem needless to cite the authorities which announce the often declared principle.

The assertion that defendant, a married woman, possessed only of real estate in the ordinary way under the act mentioned, can not bind that estate except she does so in black and white as permitted and prescribed by law is by no means *"a strict technical construction of the deed of trust."* It is no more technical than the *law itself* whose behests are thus obeyed. Outside of the terms, words, and letters of the deed, defendant could bind nothing, convey nothing, charge nothing. As to that real estate and as to any power of contracting, she is *non sui juris*, and for that reason can not contract so as to bind it except by going through prescribed written legal forms. Nor can she, for the same reason, have an agent in her husband who could bind her estate by his agreement with others, whether she were present or absent. Her husband could not bind her estate by his deed and his word of mouth is on par with his deed. *Mueller v. Kaessmann*, 84 Mo. 318, and numerous cases therein cited.

This has been the doctrine in this state concerning the married woman's act from *Silvey v. Summer*, 61 Mo. 253, down to *Macfarlane v. Heim*, 127 Mo. 327. See, also, *Henry v. Sneed*, 99 Mo. 407.

And in the very *noticeable* case of *Hickman v. Green*, 123 Mo. 165, that a married woman seized as aforesaid, could have no agent to bind her property by his representations, is distinctly announced.

After so many rulings on these points here involved, it ought not to be claimed for a moment that Boughton had any power by promises to McCollum and others to so bind his wife's estate that it should first be exhausted before his sureties should be called on to pay the note. To hold otherwise is to make a ruling at war with a long line of decisions in this state and elsewhere.

Equally at war with all our former decisions on this topic is the declaration that Mrs. Boughton could make an "express agreement" either with her husband or with the "other sureties whereby she limited her liability to that of guarantor for all the other parties." Nor was such an agreement made between *husband and wife or* between *wife* and *sureties* in *Harris v. Warner*, 13 Wend. 400, for there the `agreement was made between *men*, parties laboring under no disability; and the like remark applies to *Warner v. Price*, 3 Wend. 397.

3. We have then left for examination the deed of trust as the sole representative, repository, and expositor of the contract between the parties. No outside agreement, no verbal understanding, no evidence *aliunde* can abate or alter the force and effect of the contract therein contained. What is that contract? It is this: That "if said promissory note shall be paid at maturity" "then the property hereinbefore conveyed shall be released," etc.; "but if said promissory note shall remain due and unpaid, then this deed shall remain in force, and the said party of the second part may proceed to sell the property," etc.

It will be at once seen that there is no hint or inti-

mation contained in the deed that the wife's property should be first exhausted before the sureties could be called on to pay; on the contrary, the property mortgaged is to be sold only in the event that the parties to the note fail to pay it.

Now, in New York this case arose: The principal's name, Hovey, was first signed to the note, then followed the names of Harris *as surety;* Spencer, *surety;* Warner, *"surety* for the above names" and thereupon it was determined that if after a principal and his sureties have signed a promissory note, and another party signs his name thereto as *"surety for the above names,"* that such surety was not a *cosurety* with the first surety and was not liable to him for contribution, and could not be made thus liable unless it was shown "positively or by legal intendment that the last signor had placed himself in that relation to him," the plaintiff, who sought contribution, NELSON, J., remarking: "The defendant had a right to qualify his contract as he pleased, consistent with the rules of law. He refused to sign as cosurety with the other sureties, but did sign as surety for the whole, in which there was certainly nothing unlawful." *Harris v. Warner,* 13 Wend. 400. To the like effect see *Singer Mfg. Co. v. Bennett,* 28 W. Va. 16; *Sayles v. Sims,* 73 N. Y. 551; *Robertson v. Deatherage,* 82 Ill. 511; *Craythorne v. Swinburne,* 14 Ves. 160.

When Mrs. Boughton executed the deed of trust, her land thereby became surety for the whole debt. The result of her act, so far as binding her land was concerned, was the same in legal effect had she been *sui juris,* and last of all signed her name to the note, adding the words *"surety for the above names."* · In which case, under the authorities cited, she could not have been regarded as a cosurety; unless it were affirmatively shown by proof or by legal intendment

that she had assumed the relation of cosurety to the other sureties.

But here, in the present case, Mrs. Boughton being incapable of contracting with the other sureties, *except as expressed in the deed of trust,* and no legal intendments being allowable against her (1 Brandt, Sur. & G. [2 Ed.], sec. 93 and cases cited), it must follow that her land is not bound as a cosurety but only as a subsequent surety.

In this case it would seem that the contract of Mrs. Boughton was that of *guarantor* rather than *surety;* it was collateral and secondary; her land was not to be sold but in the event the note was not paid. She was not bound with her principal and his sureties in the same instrument. She was only joined with her husband in the deed because of statutory conformity. 1 Brandt, Sur. & G. [2 Ed.], sec. 1, and cases cited.

But whether guarantor or subsequent surety is immaterial, the result is the same. As to her, the parties to the note were all principals, and her land was surety for them and not a cosurety in any sense of the term, and so is not liable to the rule of contribution. Harris, Subrog., sec. 170, and cases cited.

4. And it is wholly immaterial whether Mrs. Boughton acknowledged the deed of trust before all the sureties had signed it or not, since the deed would not take effect until delivery, and then the signatures of the sureties would take effect by relation, and in any event the terms of the deed of trust would not be affected.

Inasmuch as the sureties on the promissory note were all principals as toward Mrs. Boughton, the purchase by McCollum of Mrs. Boughton's land inured to her benefit. *Greer v. Wintersmith,* 85 Ky. 516; 1 Brandt, Sur. & G. [2 Ed.], sec. 226.

For these reasons I think the motion for a rehearing should be denied, and the cause remanded with

directions to proceed in conformity to the views expressed in this opinion. BARCLAY, MACFARLANE, and ROBINSON, JJ., concur. BRACE, C. J., and GANTT and BURGESS, JJ., dissent.

GANTT, J.—(*dissenting*). The action is ejectment. The defense set up in the answer is that plaintiff's claim to the lots in suit depends wholly upon a foreclosure of a deed of trust executed by himself and her husband George N. Boughton to F. M. Ladd as trustee to secure a note of her husband and J. W. McCollum, the plaintiff herein, Thomas J. Ulen, and E. J. Malone. That she, defendant, was not a party to the said note and received none of the consideration; that she was at most but a guarantor for the makers of said note including the plaintiff herein; that the note had been fully paid off by plaintiff and that if not, all of the makers are solvent and there was no occasion to resort to a sale of her lots. That the sale was without authority of law and void.

I. So much of the answer as avers that defendant was not a party to the note secured by her deed of trust executed jointly with her husband and received none of the consideration for which the same was executed, constitutes no defense to this action. It has been repeatedly ruled in this state that a married woman may, jointly with her husband, execute a mortgage or deed of trust, conveying her land *to secure his sole debt*, and appoint a trustee to sell the same on default, and it would be operative even though her undertaking as to the note itself was void. *Schneider v. Staihr*, 20 Mo. 269; *Hagerman v. Sutton*, 91 Mo. 519; *Meads v. Hutchinson*, 111 Mo. 620; *Comings v. Leedy*, 114 Mo. 454.

II. What was the relation created by the several parties to the note executed by Boughton, McCollum,

Ulen, and Malone and the deed of trust executed by Boughton and wife to secure the same note, on the same day? I still maintain that as these two instruments were executed at the same time, relative to the same subject-matter, to wit, the securing of Boughton's note, they should be read and construed as one instrument—that when so read and considered, it should be held that in equity Mrs. Boughton occupied the relation of surety to her husband by reason of mortgaging her land for his sole debt—a rule well established in this state and generally by the courts of chancery both in England and the various states of the Union. *Wilcox v. Todd,* 64 Mo. 388; *Hach v. Hill,* 106 Mo. 18.

Without violating the rule of evidence which excludes parol evidence to explain or vary a written instrument it was entirely competent to receive parol evidence of the collateral contract between Boughton and the plaintiff McCollum, Ulen, and Malone that they were only sureties for Boughton, and not principals on said note, and that as the note and deed of trust were contemporaneous and formed parts of one and the same transaction and hence must be read together, that it should be held that Mrs. Boughton and these other sureties were as between themselves cosureties for the same debt, to wit, the debt of her husband who was the principal debtor therein both as to her and the other sureties, and not, as my brethren think, that she was merely a guarantor for them and that as to her they were all principals and could not be heard to say they were merely sureties.

My brethren hold that I am in error in my assumptions in two vital and radical particulars: First, that while it is true that Mrs. Boughton by virtue of her deed of trust became surety for her husband, it is not true that she was surety for him alone but for the other sureties as well. Their conclusion is reached by a

strict technical construction of the deed of trust.   The deed recites the conveyance of the lots in suit by George N. Boughton and Callie G. Boughton to F. M. Ladd "in trust, however for the following purposes: whereas the said George N. Boughton and others did on the twenty-fourth day of August, 1888, make and deliver to C. D. Matthews a promissory note as follows, to wit:" (the note for $1,500 signed by George N. Boughton, Thos. J. Ulen, J. W. McCollum, and E. J. Malone). "Now if said promissory note shall be punctually paid at maturity then the property shall be released; but if said promissory note or any part thereof shall remain unpaid after maturity, then the trustee should sell the lots to pay the same."

I concede that if a court of equity is powerless to inquire and ascertain who was in fact the principal in this note as between the signers thereof and Mrs. Boughton who made the contemporaneous deed of trust executed also to secure it, and delivered with it, then my brethren are right, as upon the face of the note itself all the makers are principals.   But I have been under the impression for many years that it was no longer an open question in this state that when several persons executed a joint, or a joint and several note, or bond, and there was nothing on the face of the instrument to indicate that any of them were sureties, if some of them were in fact sureties, and received none of the consideration, they could, both at law and in equity, establish that fact by parol testimony.   As early as *Garrett v. Ferguson's, Adm'rs* (1845) 9 Mo. 124, Judge NAPTON reviewed the English and American cases and reached the conclusion that, whatever doubts had once existed on the subject, "the law here is considered well settled in favor of the admissibility of such evidence."   *Foster v. Wallace*, 2 Mo. 231; *Bank*

*v. Wright*, 53 Mo. 153; *Coats v. Swindle*, 55 Mo. 31; 1 Brandt on Suretyship & Guar., sec. 29.

The ground upon which it was opposed was that it contradicted or varied the terms of a written contract; but the answer is that such proof does not controvert the terms of the contract, but is simply proving a fact outside of and beyond such terms. *Rose v. Williams*, 5 Kan. 483. "It is a fact collateral to the contract, and no part of it." Chief Justice SHAW in *Carpenter v. King*, 9 Metc. (Mass.) 511. "It is not to effect the terms of the contract, but to prove a collateral fact and rebut a presumption." Chief Justice SHAW in *Harris v. Brooks*, 21 Pick. 195; *Ward v. Stout*, 32 Ill. 399; *Bank v. Mumford*, 6 Ga. 44.

But it is said that this evidence is inadmissible *because Mrs. Boughton is a married woman*, and her obligations can not be enlarged by oral evidence; that her liability must be measured by the terms of the instrument she executed.

*Shroyer v. Nickell*, 55 Mo. 264; *Hagerman v. Sutton*, 91 Mo. 519; *Gwin v. Smurr*, 101 Mo. 550; *Meads v. Hutchinson*, 111 Mo. 620, are all cited to sustain the view that this evidence is inadmissible.

If these cases throw any light on this particular question, I have not been able to discover it. They hold simply that a married woman can only bind or convey her legal estate to a third person in the manner prescribed by law, and that by joining her husband, as she has in this case, she may mortgage her real estate to secure the sole debt of her husband or other person. Nothing that I have said or shall say tends in the slightest degree, in my opinion, to change one word said in either of these cases. On the contrary, I rely upon them as controlling authority.

I do not propose to extend Mrs. Boughton's liability by any contract outside of or *dehors* her obliga-

tion assumed by her mortgage. I am simply endeavoring to ascertain the true meaning of her undertaking upon equitable principles and to maintain that, as she is now invoking the equitable doctrine of exoneration from all liability for this note, it is entirely competent to show by parol evidence the relation of all the parties to that debt. I hold that the doctrine which regards the wife, who mortgages her property for the debt of another, shall be accorded the rights of a surety, is itself the outgrowth of equity jurisprudence. But certainly I am at a loss to see why it is not competent to show by parol evidence that McCollum, Ulen, and Malone were merely sureties, even if Mrs. Boughton is to be considered a surety for all of them. I think that evidence was competent whether she be held a cosurety, or merely a guarantor. *Craythorne v. Swinburne,* 14 Vesey, 160; *Hunt v. Chambliss,* 7 Smedes & Mar. 532; *Rae v. Rae,* 6 Irish Chy. (N. S.) 490; Brandt on Suretyship and Guaranty, sec. 261.

III. Granting then that Mrs. Boughton's liability and rights must be determined by the deed of trust, which I cheerfully do, what are her equities as against McCollum, Ulen, and Malone, who are confessedly also merely sureties for her husband as between him and them? Are her equities to be determined solely by the sequence of signing the note, and the forfeiture clause in the deed of trust? Is not the right and duty of contribution founded upon the maxim that "equality is equity," and *not upon contract?* I insist that in determining whether McCollum, Ulen, and Malone, who were only sureties for Boughton on the note, shall be treated as cosureties with Mrs. Boughton, who is entitled to be treated as a surety by virtue of mortgaging her lots, equity will disregard the mere formal sequence of signing the note, and the circumstance that there are *two* instruments instead of *one.* It will

look to the substance rather than the form of the engagements entered into by all the parties to those instruments.

Now it must be admitted there is no evidence of any express agreement between Mrs. Boughton and the other sureties whereby she limited her liability to that of guarantor, for all the other parties; neither is there any evidence of such an agreement with her husband to that effect as in *Harris v. Warner*, 13 Wend. 400. Whatever claim she has to absolute exoneration must grow out of the implied contract on the part of the other sureties to reimburse her if her land should be sold, or to shield it from sale in case of her husband's default.

To the proposition that contribution between sureties is not founded upon contract, as the majority of my brethren seem to hold, but rests upon a principle of natural equity and justice, to wit, that "equality is equity," among persons standing in the same relation, I cite *Dering v. Earl of Winchelsea*, 1 White and Tudor's Leading Cases in Equity, pt. 1, pp. 120 and 134, and notes, and *Campbell v. Mesier*, 4 Johns. Ch. 334–338, in which the doctrine is clearly stated which has since been uniformly declared and acted upon by the courts of chancery in this country.

Mrs. Boughton testified that it was her husband's debt; that she did not read the deed of trust. Knowing that it was her husband's debt alone, she could not suppose that the other makers bore any other relation than sureties and having made no stipulation that she should only be liable as guarantor, or surety *for all the signers*, as I agree she might have done, I am still of the opinion that she should be held as a cosurety with the other signers. *Warner v. Price*, 3 Wend. 397.

When the fact was established, as it was by abundant evidence, that Boughton was principal and all the

others, including Mrs. Boughton, were sureties, the presumption arose that they were cosureties. *Baldwin v. Fleming*, 90 Ind. 177; *Oldham v. Broom*, 28 Ohio St. 41.

That presumption was, of course, subject to rebuttal, and the trial court, upon the evidence, found against Mrs. Boughton, and I think correctly.

In the absence of any effort upon her part to compel the holder of the note to proceed first against the other sureties it seems clear to me that he could rightfully elect to have her land sold under the deed of trust and the trustee could convey a good legal title. *Schanewerk v. Hoberecht*, 117 Mo. 22.

The only question, then, remaining, is, "was the conveyance *void* because McCollum, one of the sureties, and against whom she had a right of contribution for his proportionate share of the debt, bought the land and took the deed?"

*Freeman v. Moffitt*, 119 Mo. 280, is cited as sustaining the proposition that when one had assumed the payment of a debt secured by mortgage, he could not default and permit a foreclosure and purchase the land, and in this way obtain title; but that such a transaction simply amounted to a payment of his own debt.

The principle of that case does not reach the proposition involved here. It must be remembered that the liability of all these sureties as between them and their principal, defendant's husband, is secondary and contingent. It is not their debt as between him and them. If all the sureties are solvent, then plaintiff McCollum's share of that debt would be only one fourth, and Mrs. Boughton's one fourth. If plaintiff should be compelled to pay the whole debt, if we are correct in our premise that Mrs. Boughton is a cosurety, then she would be liable for one fourth over to him. But it being apparent that the only fund to which plaintiff could resort to secure contribution was the mortgaged

lots and they were liable to be sacrificed, what principle of law or equity forbade his buying in this lot, and thus protect himself against a contingent liability for which Mrs. Boughton was primarily liable, and he, as to her one fourth, only secondarily bound therefor? I do not think the conveyance to him was void, and not being void I think he may, as against the defenses asserted in this answer, maintain his ejectment.

This view will not prevent a suit for contribution to which all the sureties and the principal should be made parties, but it would result in an affirmance of the judgment. In other words, I understand that McCollum, by paying Mrs. Boughton's, share of that debt in the purchase of her lots, was subrogated to all the rights of Matthews, the holder of the note; that Matthews could have purchased and taken a title and so could McCollum as to all but his own share of the debt, and that the question of contribution can not be adjusted on these pleadings, because no such right is asserted in the answer and because contribution depends upon the solvency of the sureties who are not parties to this action. Of course a party may plead an equitable defense and obtain affirmative equitable relief on his answer, but I do not agree that every equitable defense converts an action at law into one in equity. R. S. 1889, sec. 2131; *Wolff v. Schaeffer*, 74 Mo. 154; *Carter v. Prior*, 78 Mo. 222; *Kerstner v. Vorweg*, 130 Mo. 196. BURGESS, J., concurs in my views.