Shedd v. Webb.

157 585|
190 532|

## SHEDD ET AL. v. WEBB ET AL.

[No. 19,190.   Filed Oct. 1, 1901.   Rehearing denied Dec. 18, 1901.]

MORTGAGES.—*Foreclosure.*—*Disputing Title of Grantor.*—*Estoppel.* —*Fraud.*—In an action to foreclose a mortgage, it appeared that defendant railway company had possession of the lands in controversy under legislative authority, and had occupied the same, except a strip six feet wide, for more than forty years, as a right of way, claiming title thereto, but having no record title. The owners of the lands traversed by the right of way conveyed the right of way to a third person, who executed back his note and mortgage for the purchase money, and afterward sold and conveyed the strip of land to the railroad company, the mortgagees withholding their mortgage from record until the sale and conveyance was completed, the mortgagor and mortgagees representing to the company that there was no lien or incumbrance thereon. *Held*, that defendant company was not estopped to dispute plaintiff's claim of title to the land described in the mortgage. *pp. 585-591.*

ESTOPPEL.—*Fraud.*—Where one with full knowledge of his rights and the facts, wilfully, by words or conduct, causes another to believe in the existence of a certain state of things, and thereby induces the other to act on that belief and expend money or assume obligations which he would not otherwise have done, the former will not be permitted, as against the latter, to show that a different state of facts existed at the time. *p. 589.*

APPEAL AND ERROR.— *Practice.*— A cause will not be reversed because of the denial of a motion for a new trial, based upon the ruling of the court in the admission and rejection of evidence, and upon newly discovered evidence, where the facts found, and the evidence in support thereof, clearly show that the merits of the cause have been fairly tried and determined. *p. 591.*

From Lake Circuit Court; *J. H. Gillett*, Judge.

Suit by E. A. Shedd and others against J. A. Webb and the Lake Shore and Michigan Southern Railway Company to foreclose a mortgage. From a judgment in favor of the railway company, plaintiffs appeal. *Affirmed.*

*J. W. Youche*, for appellants.

*C. W. Miller* and *J. S. Drake*, for appellees.

HADLEY, J.—Action by appellants to foreclose a mortgage on a strip of ground 100 feet wide, and half a mile

long, for the collection of an alleged debt of $15,600. All of said land, except six feet thereof in width, was claimed by appellee, railway company, for its right of way, and was occupied by its railroad tracks.

Webb, the mortgagor, defaulted. The railway company presented what it terms a cross-complaint and ten paragraphs of answer. The first nine answers were all partial. The first and third set up a former adjudication of the plaintiff's title as to ninety-four and eighty feet, respectively, of the mortgaged premises. The fifth counted upon a legislative grant for ninety-four of the 100 feet. The sixth upon a legislative grant for eighty feet, and the seventh upon adverse possession under claim of right as to eighty feet for more than twenty years. The eleventh was a general denial. Appellants' separate demurrer was sustained to the second, fourth, eighth, and ninth, and overruled as to the fifth, sixth, seventh, and eleventh. The record discloses no ruling upon appellants' demurrer to the cross-complaint, which was answered by the general denial. The cross-complaint is against the plaintiffs, Shedd and Roby, and the codefendant Webb, and counts upon their joint and active fraud. Special finding of facts. Conclusions of law and judgment for the railway company. Appellants' motion for a new trial was overruled. There were two mortgages and two paragraphs of complaint, but no question is raised in this court upon the second mortgage and second paragraph of complaint, and the same will receive no further notice.

As sufficient to a full and complete determination of the cause it is expressly provided in the decree that the adjudication is limited and permitted "to extend no further as between the plaintiffs [appellants] and the defendant Lake Shore and Michigan Southern Railway Company than to adjudge that the mortgage referred to is void as to it, and to deny a foreclosure thereof as against it." The question adjudicated appropriately arises upon the cross-complaint. The facts germane to the issue upon the cross-complaint, set forth in the special finding, are in substance as follows: In

1835 the legislature chartered the Buffalo and Mississippi Railroad Company to build a line of railroad across Lake county, Indiana. The mortgaged premises, with much other lands, were granted by the United States to the State of Indiana, by letters patent on March 24, 1853, as "swamp lands", in conformity to the act of Congress of 1850 and pursuant to a request by the Governor of Indiana to the United States for such patent for said lands, made December 18, 1852.

March 5, 1853, the Indiana legislature passed an act purporting thereby to grant a right of way "through any swamp lands belonging to the State, to any railroad company organized, or to be organized under the laws of this State —such right of way to be to the width of 100 feet". Acts 1853, p. 108. In the fall of 1853, but prior to November 15th of that year, the successor to the rights of the Buffalo and Mississippi Railroad Company and grantor of appellee railway company, accepted said legislative grant and at the time of such acceptance entered upon the lands described in the mortgage, except a strip six feet wide off the southwest side thereof, and said grantor and said appellee have ever since operated its railway upon and claimed title to the mortgaged premises, except said six-foot strip, by virtue of the passage, acceptance, and entry, under said legislative act.

November 15, 1853, the State of Indiana sold as swamp land and issued certificates of purchase to George W. Clark for three certain lots of land traversed by the mortgaged premises and on July 3, 1854, issued its patent to said Clark for said lands. By mesne conveyances from Clark, appellants became and remain the owners of said lots, except as hereinafter stated. The mortgaged strip extends across said three lots, leaving parts of said lots on each side thereof. In addition to maintaining possession of said railroad track, said railway company constructed, prior to 1865, and has continuously to this date maintained, telegraph poles, and side fences, or remains thereof, parallel to the track, and such visible markings of possession as were calculated to put

all persons concerned upon inquiry as to the extent of the railway company's actual possession. On March 15, 1893, appellants Shedd and Roby executed to appellee James A. Webb their quitclaim deed for said 100-foot strip of land, and on the same day Webb executed back to Shedd and Roby the notes and mortgage sued on to secure the purchase money. On March 25, 1893, Webb and wife executed to the railway company their warranty deed for said strip for an agreed and valuable consideration. At the time of the conveyance to Webb it was agreed between Shedd, Roby and Webb that each should represent to the railway company that there was no lien, mortgage, or other encumbrance on said land, and, pursuant to said agreement, Shedd, Roby and Webb did, after the execution of the mortgage and before the railway company had accepted the deed from Webb, represent to the company that there was no lien, mortgage, or other encumbrance thereon, and by means of said false representations did induce the company to accept said deed, which it would not otherwise have done, with intent thereby to defraud the company to the amount of the mortgage. In aid of the conspiracy to defraud the company, Shedd and Roby withheld their mortgage from record until after the company had accepted the deed from Webb, and duly recorded the same on April 14, 1893. When the railroad accepted the deed from Webb, it had no knowledge or notice that there was any mortgage or encumbrance on the land, and believed in good faith that there was no mortgage or other encumbrance thereon. When the railway company accepted the deed from Webb it was in the actual, open, notorious, and exclusive adverse possession of all the mortgaged premises, except six feet off the southwest side thereof, under a claim of right, and did not take any possession under its deed from Webb.

The court stated its conclusions of law upon the facts found in effect as follows: (1) That the defendant railway company should be relieved of any estoppel to dispute

the plaintiffs' claim of title to the land described in the mortgage. (2) That the plaintiffs should have their foreclosure as prayed to recover the amount found due them, together with their costs as against the defendant Webb, but as against the defendant railway company the mortgage described in the complaint should be adjudged null and void. (3) That the court should and does extend this adjudication no further, as between plaintiffs and said railway company than to relieve said company of said estoppel by deed, to adjudge the mortgage void as to it, and to deny a foreclosure thereof as against it.

The facts averred in the so-called cross-complaint are substantially the same as those stated in the special finding above set forth. There is evidence in the record, both written and oral, that tends to prove all those facts. Assuming, therefore, that the facts found are true, we come to the question presented by the exceptions to the conclusions of law. Here there seems little room for controversy. It is a familiar rule that where one with full knowledge of his rights and the facts, wilfully, by words, or conduct, causes another to believe in the existence of a certain state of things, and thereby induces the other to act on that belief, and expend money or assume obligations which he would not otherwise have done, the former will not be permitted, as against the latter, to show that a different state of facts existed at the time. *Bobbitt* v. *Shryer,* 70 Ind. 513; *Dodge* v. *Pope,* 93 Ind. 480; *Wisehart* v. *Hedrick,* 118 Ind. 341.

The facts here bring this case far within the rule. The railway company had no record title to its right of way, but had possession of the lands in controversy under legislative authority expressed in 1853, for more than forty years, except a strip six feet wide, and has ever since operated its railroad thereon and claimed title thereto. In 1889, the special finding further shows, Dayton S. Morgan and Ashley Smith, being then the owners of the lots of land traversed by the mortgaged premises, by appellant Ed-

ward S. Roby, as their attorney, prosecuted in the Lake Circuit Court to final judgment, which is still in force, an action against appellee railway company, to recover possession of the identical lands, or an assessment of damages, and were unsuccessful both in the circuit and in this court on appeal (*Morgan* v. *Lake Shore, etc., R. Co.,* 130 Ind. 101) and, pending that litigation, and while the case was here on appeal, appellants Shedd and Roby took a deed for the premises from Morgan and Smith, and received the land impressed with all the binding force and effect of said judgment.

Roby, being the active attorney of Morgan and Smith in the suit prosecuted by them, had actual knowledge that his grantors had had their day in court with the railway company, and that the judgment was in favor of the company. With this knowledge, and standing in the shoes of Morgan and Smith, it was obviously the purpose of appellants to secure a retrial of the company's right of possession by a legal fiction which involved the necessity of entrapping the company into the acceptance of title by and through them, and possibly the incidental advantage of inducing the company to assume, as a consideration, the obligation of providing conveniences, at large expense, that would promote the private interests of appellants in the town of Roby. It was to carry this scheme forward that appellants' mortgage was acquired and by them withheld from public record until the false representations of the trio had succeeded in accomplishing the fraudulent purpose. This was much more than a standing by,—much more than a passive fraud, which in many instances will estop the guilty party from asserting a fact contrary to that reasonably inferred from his conduct, to the injury of one misled thereby. *Vickery* v. *Board, etc.,* 134 Ind. 554, 556; *Board, etc.,* v. *Plotner,* 149 Ind. 116. It was a preconceived plan to secure by dishonest means that which could not be otherwise obtained. To give countenance to such conduct would bring reproach

upon the law. The court did not err in its conclusions of law.

Appellants having conveyed the mortgaged premises to the mortgagor by quitclaim deed, the only interest they have, or claim to have, is in virtue of their mortgage, and when it is found to be void, their right to litigate the title ceases. The questions, therefore, arising upon the other pleadings become immaterial.

Many questions are presented as reasons for a new trial, but they arise chiefly upon the admission and rejection of evidence, which, with very few exceptions, relate to the issues not considered in this opinion, and are therefore unimportant. Conceding that the exceptions to the general class, and the question arising upon the affidavits of newly discovered evidence, should all be ruled in favor of appellants' contention, we should even then find ourselves precluded by §670 Burns 1894, §658 R. S. 1881 and Horner 1897, from disturbing the judgment, since the facts found, and the evidence in support thereof, clearly show that the merits of the cause have been fairly tried and determined in the court below. *LaPlante* v. *State, ex rel.*, 152 Ind. 80.

Judgment affirmed.

Baker, J., took no part in the decision of this cause.